## FEDERAL COMMUNICATIONS COMMISSION *v.* WOKO, INC.

No. 65. Argued November 22, 1946.—Decided December 9, 1946.

*Harry M. Plotkin* argued the cause for petitioner. With him on the brief were *Solicitor General McGrath, Stanley M. Silverberg, Benedict P. Cottone* and *Max Goldman.*

*William J. Dempsey* argued the cause for respondent. With him on the brief was *William C. Koplovitz.*

MR. JUSTICE JACKSON delivered the opinion of the Court.

WOKO, Incorporated, for some years has operated a radio station at Albany, New York, and appears to have rendered public service of acceptable quality and to be able to continue. The Federal Communications Commission refused to renew its license because of misrepresentations made to the Commission and its predecessor as to the ownership of the applicant's capital stock. Two hundred and forty shares, being twenty-four per cent of its outstanding capital stock, was owned by one Pickard and his family. For some twelve years they received all dividends paid on the stock and Pickard took an active interest in the Company's affairs. He also was a vice-president of the Columbia Broadcasting Company and had obtained the stock on the assurance that he would help to secure Columbia affiliation for Station WOKO, would furnish, without charge, Columbia engineers to construct the station at Albany, and would supply a grand piano and certain newspaper publicity.

The company, however, in reporting to the Federal Radio Commission and to the Federal Communications Commission the names of its stockholders as it was required to do for many years and in many applications, concealed the fact that the Pickards held this stock interest and represented that the shares were held by others. Its general manager appeared on behalf of the applicant at various hearings and furnished false testimony to both Commissions regarding the identity of the corporation stockholders and the shares held by each so as to conceal the Pickard holdings. The purpose of the concealment

was to prevent the facts from becoming known to Pickard's Columbia colleagues.

The Court of Appeals for the District of Columbia reversed the Commission's decision denying renewal of the license, a majority for the various reasons that we will consider. The dissenting Chief Justice noted that he did "very heartily agree with the view that this is a hard case. The Commission's drastic order, terminating the life of the station, punishes the innocent equally with the guilty, and in its results is contrary to the Commission's action in several other comparable cases. But that the making of the order was within the discretion of the Commission, I think is reasonably clear." 153 F. 2d 623, 633. We granted certiorari because of the importance of the issue to the administration of the Act.

We come to a consideration of the reasons which led the Court of Appeals to reverse the order of the Commission under the admonition that "review by the court shall be limited to questions of law and that findings of fact by the Commission, if supported by substantial evidence, shall be conclusive unless it shall clearly appear that the findings of the Commission are arbitrary or capricious." 48 Stat. 1094, 47 U. S. C. § 402 (e).

The Act provides as to applications such as WOKO filed that "All such applications shall set forth such facts as the Commission by regulation may prescribe as to the citizenship, character, and financial, technical, and other qualifications of the applicant to operate the station; the ownership and location of the proposed station . . . and such other information as it may require." It requires such statements to be under oath or affirmation. 48 Stat. 1085, 47 U. S. C. § 308 (b). It provides, too, that any station license may be revoked for false statements in the application. 48 Stat. 1086, 47 U. S. C. § 312 (a).

It is said that in this case the Commission failed to find that the concealment was of material facts or had influ-

enced the Commission in making any decision, or that it would have acted differently had it known that the Pickards were the beneficial owners of the stock. We think this is beside the point. The fact of concealment may be more significant than the facts concealed. The willingness to deceive a regulatory body may be disclosed by immaterial and useless deceptions as well as by material and persuasive ones. We do not think it is an answer to say that the deception was unnecessary and served no purpose. If the applicant had forthrightly refused to supply the information on the ground that it was not material, we should expect the Commission would have rejected the application and would have been sustained in so doing. If we would hold it not unlawful, arbitrary or capricious to require the information before granting a renewal, it seems difficult to say that it is unlawful, arbitrary or capricious to refuse a renewal where true information is withheld and false information is substituted.

We are told that stockholders owning slightly more than 50 per cent of the stock are not found to have had any part in or knowledge of the concealment or deception of the Commission. This may be a very proper consideration for the Commission in determining just and appropriate action. But as matter of law, the fact that there are innocent stockholders can not immunize the corporation from the consequences of such deception. If officers of the corporation by such mismanagement waste its assets, presumably the State law affords adequate remedies against the wrongdoers. But in this as in other matters, stockholders entrust their interests to their chosen officers and often suffer for their dereliction. Consequences of such acts cannot be escaped by a corporation merely because not all of its stockholders participated.

Respondent complains that the present case constitutes a departure from the course which the Commission has taken in dealing with misstatements and applications in

other cases. Much is made in argument of the fact that deceptions of this character have not been uncommon and it is claimed that they have not been dealt with so severely as in this case. *Cf. Navarro Broadcasting Association*, 8 F. C. C. 198. But the very fact that temporizing and compromising with deception seemed not to discourage it, may have led the Commission to the drastic measures here taken to preserve the integrity of its own system of reports. The mild measures to others and the apparently unannounced change of policy are considerations appropriate for the Commission in determining whether its action in this case is too drastic, but we cannot say that the Commission is bound by anything that appears before us to deal with all cases at all times as it has dealt with some that seem comparable.

It also is contended that this order inflicts a penalty, that the motive is punishment and that since the Commission is given no powers to penalize persons, its order must fall. We think it unnecessary to indulge in the exposition of what a penalty is. It is enough to decide this case to know what a penalty is not. A denial of an application for a license because of the insufficiency or deliberate falsity of the information lawfully required to be furnished is not a penal measure. It may hurt and it may cause loss, but it is not made illegal, arbitrary or capricious by that fact.

Lastly, and more importantly, the Court of Appeals suggested that in order to justify refusal to renew, the Commission should have made findings with respect to the quality of the station's service in the past and its equipment for good service in the future. Evidence of the station's adequate service was introduced at the hearing. The Commission on the other hand insists that in administering the Act it must rely upon the reports of licensees. It points out that this concealment was not caused by slight inadvertence nor was it an isolated instance, but that

the Station carried on the course of deception for approximately twelve years. It says that in deciding whether the proposed operations would serve public interest, convenience or necessity, consideration must be given to the character, background and training of all parties having an interest in the proposed license, and that it cannot be required to exercise the discretion vested in it to entrust the responsibilities of a licensee to an applicant guilty of a systematic course of deception.

We cannot say that the Commission is required as a matter of law to grant a license on a deliberately false application even if the falsity were not of this duration and character, nor can we say that refusal to renew the license is arbitrary and capricious under such circumstances. It may very well be that this Station has established such a standard of public service that the Commission would be justified in considering that its deception was not a matter that affected its qualifications to serve the public. But it is the Commission, not the courts, which must be satisfied that the public interest will be served by renewing the license. And the fact that we might not have made the same determination on the same facts does not warrant a substitution of judicial for administrative discretion since Congress has confided the problem to the latter. We agree that this is a hard case, but we cannot agree that it should be allowed to make bad law.

The judgment of the Court of Appeals is reversed and the case remanded to that court with direction to remand to the Commission.

MR. JUSTICE BLACK took no part in the consideration or decision of this case.