## BROADCASTING SERVICE ORGANIZATION, Inc. v. FEDERAL COMMUNICATIONS COMMISSION.

### No. 9690.

United States Court of Appeals
District of Columbia Circuit.

Argued May 10, 1948.

Decided Nov. 24, 1948.

Mr. Walter M. Bastian, of Washington, D. C., with whom Messrs. Ben S. Fisher and John P. Southmayd, both of Washington, D. C., were on the brief, for appellant. Mr. Charles Vernon Wayland, of Washington, D. C., also entered an appearance for appellant.

Mr. Richard A. Solomon, attorney, Federal Communications Commission, of Washington, D. C., with whom Messrs. Benedict P. Cottone, General Counsel, Federal Communications Commission, Harry M. Plotkin, Assistant General Counsel, Federal Communications Commission, Max Goldman, Assistant Chief, Litigation and Administration Division, Federal Communications Commission, and Dee W. Pincock,

Attorney, Federal Communications Commission, all of Washington, D. C., were on the brief, for appellee.

Before EDGERTON, CLARK, and WILBUR K. MILLER, JJ.

CLARK, J.

Appellant, a Massachusetts corporation, has been the licensee of Station WORL, which operates in Boston, Massachusetts, on 950 kc, with 1 KW, daytime only, since 1931. On May 27, 1944, appellant filed with appellee Commission an application for renewal of its station license, pursuant to Section 308(a) of the Communications Act of 1934, as amended.[1] Hearings were held in October and December of 1944 on this application "before a presiding officer duly appointed by the Commission to determine whether public interest, convenience and necessity will be served by a grant of the application."[2] Approximately one year after these hearings, the Commission issued its proposed decision which embodied lengthy findings of fact and conclusions of law, the net result of which was to conclude that "the applicant [appellant] cannot be entrusted with the responsibilities of a licensee" and, hence, that the renewal application should be denied. Appellant duly filed exceptions to this proposed decision and a further hearing was had in January of 1946.

On August 26, 1946, appellant and the Bitner Broadcasting Company (hereinafter called "Bitner") filed a joint application requesting the Commission's consent for transfer of control of the appellant from its present stockholders to the sole two stockholders of Bitner for a consideration of $200,000.

On April 23, 1947, the Commission released its final decision (adopted April 21, 1947) denying appellant's application for renewal of license of Station WORL and dismissing as moot the pending application for transfer of control of appellant from its present stockholders to those of Bitner. This decision was by a vote of 3 to 1 (Commissioner Jett dissenting with opinion) with the remaining 3 of the 7 members of the Commission not participating.

Appellant thereafter duly filed a petition for rehearing and reconsideration claiming, among other things, that the Commission's final decision was invalid since less than a majority of the members of the Commission voted in favor of the denial of the application and that, of the four who did vote, only three—less than a quorum—participated in the oral argument on the proposed decision. For this reason and because of recent changes in the Commission and its staff, appellants sought a reargument on the final decision before the entire Commission. On July 28, 1947, appellee Commission issued

---

[1] 48 Stat. 1084 (1934), 47 U.S.C.A. § 308(a).

[2] The specific issues as designated in the notice of hearing were as follows:

"1. To determine who are the present owners of the stock of the applicant corporation, and when and from whom said stock was acquired.

"2. To determine whether the license granted to the applicant corporation, or the rights or responsibilities incident thereto, have been in any manner, either directly or indirectly, transferred, assigned, or disposed of without the consent of the Commission, as provided by the Communications Act of 1934, as amended, and particularly Section 310(b) thereof.

"3. To determine whether the statements and representations made in the various applications, documents, and reports filed with the Commission on behalf of the applicant, by its officers, directors, and/or agents, have fully and

accurately reflected the facts concerning the ownership and distribution of the stock of the company.

"4. To determine whether the applicant's officers, directors, stockholders, and/or agents, or either of them, have made false statements and representations to the Commission as to the ownership, transfer, and/or control of the stock of the applicant.

"5. To determine whether all contracts and agreements which have been entered into by applicant's officers, directors, stockholders, and/or agents, relative to the sale and transfer of the stock of the applicant corporation, have been reported to the Commission as required by Section 43.1 of the Rules and Regulations.

"6. To determine whether in view of the facts adduced under the foregoing issues, public interest, convenience, or necessity would be served by granting the instant application."

an order designating the petition for rehearing for oral argument and ordering that such argument be directed to the findings of fact and conclusions of law set out in the final decision of April 21, 1947. Such argument was had, apparently before all seven Commissioners, and a later Commission order of October 15, 1947, was issued reaffirming its final decision of April 21, 1947. Once again, Commissioner Jett dissented in substantially the same terms as he used in his prior dissent. Commissioner Hyde did not participate in either the final decision or the later reaffirming order, although he appears to have been present during the argument on the petition for rehearing. The Commission's order of October 15, 1947, made no decision on appellant's request in its petition for rehearing for an opportunity at a further hearing to present testimony on the character and integrity of its principals and no decision was made on appellant's contention that dismissal as moot without hearing of the application for transfer of control to Bitner contravenes Section 309(a) of the Act,[3] except to state in general terms that "no sufficient reason has been advanced for departure" from the Commission's previous rulings. Appellant has perfected this appeal from the above-described final decisions and orders of the Commission. Appellant continues to operate Station WORL by virtue of various extensions of temporary licenses granted by the Commission in order to preserve the *status quo* during the pendency of this appeal.

A summarized statement of the pertinent facts and transactions which gave rise to this controversy may well be enlightening at this point.

In 1937, appellant corporation was in rather serious financial difficulty, having lost money for several years. Accordingly, its four stockholders (then Crockwell, Phelan, Eynon and Nordblom, by name) decided that a sale of the stock of the corporation was necessary to provide new funds for the corporation. There followed a series of stock transactions, somewhat involved, as a result of which the above-named four stockholders became completely divested of all interest in and control over the stock of appellant. The new stockholders and present officers and stockholders of the corporation are Harold A. Lafount, Sanford H. Cohen, George Cohen and Robert E. Davison. As indicated above, this divestiture did not result from a single transaction, but was the ultimate result of at least six separate agreements and/or contracts of sale. Just when this divestiture became final for all legal purposes is problematical, but it is certain that it had been accomplished by November of 1943, prior to the filing by appellant of its application for renewal of license. Lafount was a key figure in all of these transactions. A former member of the Federal Radio Commission (predecessor to appellee Commission) and now Director-President and principal stockholder of appellant corporation, Lafount either made or engineered the subsequent purchases which finally resulted in the acquisition of all of the stock of appellant corporation by Lafount, the Cohen brothers, and Davison.[4] The substance of the appellee's case against appellant is that appellant, through its authorized agents, either failed to make at all, or unduly delayed in making, certain necessary reports to the appellee[5] and that some of the reports that were filed contained false and misleading information so as to reflect an inaccurate, if not untrue, picture of stock ownership in the corporation. Appellant explains these asserted derelictions on the basis of oversight, in the cases of failure to report and false reporting, and, in the cases of delay in reporting, bona fide belief that because of the nature of the particular transactions a report was unnecessary at the time. The Commission, in its final decision of April 21, 1947, con-

---

[3] 48 Stat. 1085 (1934), 47 U.S.C.A. § 309(a).

[4] The two Cohens and Davison are concededly all reputable attorneys of considerable experience.

[5] The Rules and Regulations of the Commission required a licensee such as appellant, within 30 days of any change in holders or beneficial owners of its corporate stock, to report such change in detail and in conformity with instructions set forth in forms adopted by the Commission for that purpose. Such reports as were made by appellant were apparently all made on the forms prescribed by the Commission.

cluded that "the continued series of misrepresentations and concealments * * * clearly demonstrates that the applicant [appellant] does not possess the necessary character qualifications for a licensee of a radio station, and that the public interest, convenience and necessity will therefore not be served by a grant of a renewal of license to this applicant. We also conclude," the decision continues, "that this want of the requisite character qualifications is so serious that the rendition of a satisfactory broadcasting service by the applicant cannot serve to detract from this conclusion."

It is undisputed that the present officers and stockholders of appellant are all citizens of the United States who possess the technical qualifications required of officers and stockholders of a licensee corporation. Further, it is a matter of record that, under the direction and guidance of Lafount as President of appellant corporation and with the aid of other personnel under him, Station WORL grew and prospered both in its financial status and in the public esteem. Appellant points out, and appellee does not deny, that in 1938 the station showed a loss of $11,424. on total receipts of $54,754. and that in 1943 there was a profit of $25,101. with receipts amounting to $240,468. The so-called "Hooper rating"[6] of WORL rose progressively from 1941 to 1943, putting WORL in a tie for first place among Boston daytime listeners. The station also received the McNinch Award for its outstanding weekly public service programs.

The Communications Act of 1934, as amended, provides for the taking of an appeal to this court in cases such as this and empowers this court to affirm or reverse a decision of the Commission, subject, however, to certain express limitations. Section 402(e) of the Act provides in pertinent part as follows:

" * * * *Provided, however,* That the review by the court shall be limited to questions of law and that findings of fact by the Commission, if supported by substantial evidence, shall be conclusive unless it shall clearly appear that the findings of the Commission are arbitrary or capricious. * * * " [7]

The above-quoted provision has been interpreted and passed upon many times by this court and other federal courts. For example, in Yankee Network, Inc., v. Federal Communications Commission,[8] we said that it was immaterial that the evidence before the Commission was susceptible of other conclusions than those drawn from it by the Commission and that, assuming the presence of substantial evidence, we would not substitute our judgment for that of the Commission. Also, in Missouri Broadcasting Corporation v. Federal Communications Commission,[9] we pointed out that Section 402(e) of the Act implies that there shall be a hearing and the taking and preserving of the evidence and that this court is empowered "to deny effect to an order made without any supporting evidence or contrary to the indisputable character of the evidence, or wherever the hearing or the decision is inadequate, unfair, or arbitrary." [10] The Supreme Court denied certiorari in the Missouri Broadcasting case.[11] However, regardless of whatever interpretation the courts have placed upon the words of Congress, we believe that the most accurate guides for determining legislative intent and purpose are the words themselves which were enacted into law, provided those words are unambiguous and unequivocal, as are the words of Section 402(e) of the Act. Those words say, literally, that this court's review "shall be limited to questions of law." They also say, literally, that the Commission's findings of fact (not its conclusions of law) shall be conclusive (1) "if supported by substantial evidence" and (2) "unless it shall clearly appear that the findings * * * are arbitrary or capricious." We thus take it to be not only the privilege but the duty of

---

[6] This rating is closely watched by most advertising men and generally considered by radio men to be a valuable criterion of popularity of and public interest in a radio station or program.

[7] 48 Stat. 1094 (1934), 47 U.S.C.A. § 402(e).

[8] 1939, 71 App.D.C. 11, 107 F.2d 212.

[9] 1937, 68 App.D.C. 154, 94 F.2d 623.

[10] 68 App.D.C. at page 156, 94 F.2d 625.

[11] 1938, 303 U.S. 655, 58 S.Ct. 759, 82 L.Ed. 1115.

this court, in compliance with the plain meaning of the above-discussed statutory language, to do the following three things: (1) To determine all questions of law raised by this appeal; (2) to ascertain from the record before us whether the Commission's findings of fact in this case are supported by substantial evidence; and (3) to decide whether or not it clearly appears that the Commission's findings of fact are arbitrary or capricious. Further, we take it as obvious that, should we decide *either* that the findings of fact are not supported by substantial evidence or that such findings are clearly shown to be arbitrary or capricious, we then should no longer accord those findings the conclusiveness otherwise bestowed upon them by the Act. Finally, in conjunction with the above discussion of Section 402(e) of the Act, we wish to emphasize one further restriction placed upon this court by that section. It empowers this court "to enter a judgment *affirming or reversing* the decision of the Commission." (Italics supplied) There is no middle ground. And, in the event that reversal is decided upon by this court, that section commands that we "shall remand the case to the Commission to carry out the judgment of the court." Therefore, should we find any error by the Commission in any of the respects categorized above, there can be no question of our modifying the Commission's decision or of affirming in part and reversing in part; we have no recourse but to reverse and remand to the Commission.[12]

It is beyond dispute that the ultimate and prevailing purpose of the Act is to foster and protect the public interest, convenience, and necessity in all of the means of rapid communication now in vogue in this country, including radio broadcasting. The frequent express references in the statute to this interest, convenience, and necessity of the public and the licensing procedure set forth therein make this abundantly manifest, as do the many published opinions of this and other federal courts.[13]

We recognize too that it is the Commission and not the courts which is charged by the Act with determining whether or not the renewal of an existing broadcasting license would serve the public interest, convenience, or necessity. However, when such a determination has been made by the Commission and the case afterward comes here through due process, it then becomes the function of this court, as discussed above, to decide whether that determination was reached in accordance with established law and whether it was based on substantial evidence and not arbitrary and capricious. In that sense, a decision by this court is not a substitution of our opinion for that of the Commission.

In the instant case, the "Conclusion" of the Commission in its final decision adopted on April 21, 1947, contained the following statement: " * * * And it has been held that the Commission may refuse to renew the license of an applicant who has willfully and knowingly misrepresented

---

[12] Chief Justice Hughes, speaking for the Supreme Court in 1933, stated that it is not within the authority of this court "to revise the action of the Commission [then the Federal Radio Commission] from an administrative standpoint and to make an administrative judgment. * * * The provision that, in case the Court reverses the decision of the Commission, 'it shall remand the case to the Commission to carry out the judgment of the Court' means no more than that the Commission in its further action is to respect and follow the Court's determination of the questions of law. * * *" Federal Radio Commission v. Nelson Bros. Co., 1933, 289 U.S. 266, 276, 277, 278, 53 S.Ct. 627, 633, 77 L.Ed. 1166, 89 A.L.R. 406, quoted with approval in Heitmeyer v. Federal Communications Commission, 1937, 68 App.D.C. 180, 95 F.2d 91. See also, 1940, 124 A.L.R. 985.

[13] In National Broadcasting Co., Inc., et al. v. United States et al., 1943, 319 U.S. 190, 215, 216, 63 S.Ct. 997, 1009, 87 L.Ed. 1344, Justice Frankfurter, after pointing out that the "criterion governing the exercise of the Commission's licensing power is the 'public interest, convenience, or necessity' ", stated that the Commission "was, however, not left at large in performing this duty. The touchstone provided by Congress was the 'public interest, convenience, or necessity' a criterion which 'is as concrete as the complicated factors for judgment in such a field of delegated authority permit.' "

1012

facts concerning its stock ownership in reports and applications submitted to the Commission. Federal Communications Commission v. WOKO, Inc., 1946, 329 U.S. 223, 67 S.Ct. 213, 91 L.Ed. 204.

"In that case Mr. Justice Jackson, speaking for a unanimous court stressed that it was 'beside the point' whether or not the misrepresentation was material or whether the Commission would have acted differently if the true facts had been known to it. He went on to say:

" 'The fact of concealment may be more significant than the facts concealed. The willingness to deceive a regulatory body may be disclosed by immaterial and useless deceptions as well as by material and persuasive ones. We do not think it is an answer to say that the deception was unnecessary and served no purpose.'

"In this case, however, whatever the purpose in concealing the information from the Commission may have been, it is clear that the misrepresentations were material in that they related to concealment of 40% of the stock in the applicant corporation."

It is evident from the above-quoted and other portions of the Commission's final decision and from Commissioner Jett's dissent thereto that the majority of the Commission regarded the Supreme Court's opinion in Federal Communications Commission v. WOKO, Inc., (hereinafter referred to as the WOKO case),[14] as applicable and controlling in the instant case. Certainly the wording of the Commission's final decision in this case seems unjustifiably geared so as to bring this case within the doctrine of the WOKO opinion. The majority of this court believes that a careful examination and comparison will disclose material factual distinctions which take the instant case beyond the purview of the WOKO opinion and thus reveal the error of the Commission in applying the WOKO doctrine to the facts of the present case.

In the WOKO case, as here, the Commission refused to renew the license of an existing radio broadcasting station and there, as here, the Commission based its refusal to renew on its conclusion that the station could not be entrusted with the responsibilities of a licensee because of the licensee's purposeful concealment of stock ownership and various stock transactions. Here the factual similarity between the two cases ceases, in our opinion. In the WOKO case, one Sam Pickard, a former member of the Federal Radio Commission and then a vice-president of Columbia Broadcasting System, had been instrumental in procuring for Station WOKO a CBS network affiliation much desired by that station in order to solve some of its financial difficulties. At Pickard's suggestion, he was rewarded for this and other efforts in behalf of the station by being given 24% of the licensee's outstanding capital stock, part of which Pickard directed to be given to Lawrence Lowman, another vice-president of CBS. Later this stock was transferred to Mrs. Pickard and two holding companies controlled by the Pickards, and still later to one R. K. Phelps, a brother-in-law of Mrs. Pickard. From the beginning, Pickard had requested that his ownership of the stock be kept secret since he would be personally embarrassed should his associates at CBS learn of it. He also suggested that there would be no need to disclose this ownership to the Commission since the Commission was interested only in knowing whether or not any of the stockholders were aliens. Pickard's requests for concealment of his stock ownership were honored by the licensee corporation with the result that, in the various reports and applications filed with the Commission by the licensee of WOKO, only the name of the record owner of the stock was given and the name of the beneficial owner (Pickard) was knowingly and purposefully withheld. It was this wilful concealment and purposely false reporting of stock ownership plus certain false testimony given by WOKO's general manager at various Commission hearings which directly lead to the Commission's refusal to renew the WOKO license. On appeal to this court, we reversed.[15] Certiorari having been granted, the Supreme Court in

14 1946, 329 U.S. 223, 67 S.Ct. 213, 215, 91 L.Ed. 204.

15 Our opinion in that case was written by Justice Wilbur K. Miller and accompanied by a short dissent by then Chief Justice Groner and appears sub nomine WOKO, Inc., v. Federal Communications Commission, 1946, 80 U.S. App.D.C. 333, 153 F.2d 623.

turn reversed the decision of this court and upheld the Commission's refusal to renew the WOKO license.[16] As stated by the Commission in the above-quoted portion of its Conclusion in the present case, the opinion of the Supreme Court in the WOKO case held in substance that the Commission is justified in refusing to renew the license of a radio broadcasting station where there has been *wilful and knowing misrepresentations* of facts, material or immaterial, concerning its stock ownership. That is the law as established in the WOKO case and that is the law as it exists today. It was also the law at the time the Commission released its final decision refusing to renew the WORL license. It should be noted that the opinion of the Supreme Court in the WOKO case makes abundantly clear the purposeful nature of the concealment in that case by use of the terms "willingness to deceive", "deliberate falsity," and "systematic course of deception." Further, the record in the WOKO case clearly indicated the presence in that case of a definite motive for the wilful concealment and purposeful falsity practiced therein.

In the instant case, no motive for concealment has been established. The Commission's findings are devoid of any suggestion of evil motive. Indeed, the Commission's conclusion in this case concedes that the purpose for the alleged concealment "is not entirely clear." Moreover, and of even greater significance, the Commission's findings and the record itself as printed in the joint appendix are equally devoid of any evidence of wilfullness or, using the Supreme Court's language in the WOKO case, of "willingness to deceive." Appellee, while persistently urging that the record convincingly supports the findings and conclusion of the Commission, fails to call our attention to any single specific portion of the voluminous record before us which would justify the Commission's conclusion of wilfullness, nor have we by independent search discovered any such portion of the evidence. There is not before us now, as there was before us in the WOKO case, the question of materialty *vel non* of the facts concealed. That question was put to rest by the above-quoted part

of the opinion of the Supreme Court in the WOKO case. We are now concerned with a determination whether from the facts of record in this case there is any substantial evidentiary basis for a conclusion of wilfullness and false misrepresentation in the legal sense. As indicated above, and for the additional reason that in the WOKO case there was false testimony given at Commission hearings, whereas in the instant case the witnesses before the Commission were completely candid in their testimony, we are constrained to hold that the instant case differs materially from the WOKO case and is factually distinguishable therefrom. The Commission was, therefore, in eror in this case in placing heavy reliance upon the Supreme Court's WOKO opinion. We agree with Commissioner Jett who said in his dissent: "I do not feel that the record against WORL supports the finding that any of the parties are guilty of having made willful misrepresentations to the Commission." Hence we rule, as a matter of law, that the WOKO opinion of the Supreme Court is inapplicable in the present case and that the Commission erred in concluding to the contrary.

We also rule, for the same and other reasons, that the Commission acted arbitrarily, capriciously, and unreasonably in refusing to renew appellant's license to operate WORL where there was not only no *substantial* evidence to support its implied finding of wilful misrepresentation, but no evidence at all. The terms "misrepresentation", "concealment", "willingness to deceive", and "planned program of deception" appearing in the Commission's final decision in this case are all terms which, taken either in their ordinary or their technical sense, necessarily imply a purposeful, knowing, and active exercise of improper or bad intent. They are strong terms which exclude any concept of accidental misstatement or of innocent, unintentional mistake. Appellant strenuously urged before the Commission and now convincingly argues before us that it has at all times acted in good faith in dealing with the Commission and that the conceded mistakes which it has made with regard to the required reports to the Commission were never intentional

---

[16] Supra, footnote 14.

or the result of a lack of good faith.[17] In the view of the majority of this court, the record amply supports appellant's protestations of good faith. True, the record is replete with evidence that appellant's agents were careless and inaccurate and, perhaps, lacking in good judgment as to the reports required by the Commission, but none of these characteristics in themselves imply bad faith and it is equally certain and of record that none of these characteristics were projected over to and affected the management and conduct of appellant's business as a radio broadcasting licensee. In fact, appellant's outstanding public service record and its progressively increasing financial stability—both matters of record in this case—expressly negative any such projection. The Commission in its final decision pointed with apparent disapproval to the failure of the corporation to declare dividends and to the "plowing back" of its profits for the years of 1937 to 1943.[18] We believe that, far from showing a lack of good faith or any mismanagement on the part of appellant, this is evidence of sound business judgment, where the corporation had theretofore been in financial difficulty, and demonstrates an awareness of its responsibilities and duties as a licensee and of its obligations to the public.

Failing in its efforts to specifically establish a lack of good faith on the part of appellant, appellee in its brief next attempts to show appellant's lack of qualifications as a licensee by resort to inference and presumption. In its brief, appellee states: "Appellant fails to recognize that a reckless disregard of the duties and responsibilities of a licensee manifested over a substantial period of time by gross carelessness and wilful disregard of the true facts known to the licensee or available to it, in making reports to the Commission, may as clearly demonstrate a want of qualifications to be a licensee as the making of misstatements for a revealed motive." The chief

difficulty with this statement is that it presupposes "reckless disregard" of duties and "gross carelessness and wilful disregard" of facts by appellant which are not shown by the record. Nor is the absence in the record of evidence of wilful and reckless disregard cured by appellee's attempted analogy between this case and cases of imputed intent in torts or in criminal law because such allegedly analogous cases all require a showing of heedlessness of the foreseeable harmful consequences. Here there is no substantial evidence of any heedlessness and it is conceded that there have been and can be no harmful consequences flowing either to the Commission or to the public interest as a result of appellant's improper reports.

There is yet another reason for ruling as we do that the Commission acted arbitrarily in its refusal to renew the WORL license. Though not a matter of record in this case, it appears from appellant's brief that, on July 7, 1942, the Commission granted appellant's then pending application for renewal of the WORL license. It also appears from appellant's brief that the Commission had full knowledge, by means of reports filed by appellant and by means of a report submitted by one of the Commission's own legal staff in 1941, that Lafount and Sanford Cohen had, in 1937 and 1938, acquired a 60% or controlling interest in the voting stock of appellant corporation in alleged violation of Section 310(b) of the Act,[19] which prohibits transfer of control of a licensee without express Commission consent. It thus appears that the Commission condoned in 1942 some of the very same actions of appellant that it is now condemning and upon which the refusal to renew is being based. Though counsel for appellee, in oral argument before this court denied categorically such knowledge on the part of the Commission in 1942, yet it is noteworthy that no further explanation to support the Commission's claim of no

---

[17] Counsel for appellant, in his oral argument before this court, struck perhaps the keynote of appellant's position in this respect when he stated: "We say we've never sinned; erred, yes, but never sinned!"

[18] In the 29th Finding of Fact of its final decision the Commission stated: "* * * Moreover, although the evi-

dence indicates that the station was increasingly profitable during the period 1937 to 1943, no dividends were paid out, but instead all profits were retained in the broadcasting company to build up that organization for the benefit of the present stockholders of record."

[19] 48 Stat. 1086 (1934), 47 U.S.C.A. § 310 (b).

knowledge is attempted and appellee's brief is completely silent as to appellant's contention in this respect. In effect, then, appellant's claim is uncontroverted and is further indication (though not evidence) of the arbitrariness of the Commission's refusal to renew.

We wish it clearly understood that we are *not* ruling that, once forgiven, a licensee should always thereafter be forgiven for irregularity in compliance with statute or with rule or regulation. The fallacy of such a rule is obvious. Nor are we ruling that a licensee can with impunity disregard or disobey statute, rule, or regulation. Further, we do not question the power of the Commission, within statutory bounds, to adopt and administer a stricter policy of enforcement of its rules and regulations with regard to revocation or renewal of broadcasting licenses.[20] But the Commission, and this court on review, must constantly be guided by the prevailing purpose of the Communications Act in ascertaining the result in each case which will best serve the public interest. In such a determination there is no place for the arbitrary application of pointless technicality unsupported by substantial evidence. We hold, therefore, that, as to this particular case, taking into consideration all of the circumstances discussed above, the Commission's decision of April 21, 1947, was improper as a matter of law and lacked the support of substantial evidence and was the result of arbitrary and capricious action by the Commission. Accordingly, pursuant to Section 402(e) of the Act, the decision of the Commission is reversed and the case remanded to the Commission to carry out the judgment of this court.

In this view of the case, it is unnecessary to make any decision at this time as to appellant's claim that the Commission violated the statute and its own rules in denying a hearing on the joint application for transfer of control to Bitner. Accordingly, we make no decision as to this contention.

Reversed and remanded.

EDGERTON, Circuit Judge (dissenting).

The Commission found in effect that appellant had repeatedly made false statements to the Commission, and that it had done so willfully. I do not see how either of these findings can be thought to lack support. Their support includes the following facts, among others. In 1937, to show that appellant was financially qualified for increased facilities, it filed a "Financial Statement" that included under Assets "Cash in Banks $25,362.11." It is not only proved but conceded that appellant's cash in banks was actually $362.11. Appellant overstated its assets by $25,000 net. It did this consciously and deliberately. It does not claim to have believed it had the missing $25,000, either in banks or elsewhere, in cash or in any other form. Appellant's witness says the money was "all arranged for" and that "had the pending application been granted, the money would have been available for the improvements at once. * * * It was not shown as a liability, which was unfortunate." But the witness's confidence, however well founded, in the availability of a loan, does not obviate the fact that a false statement was deliberately made. Other misrepresentations related to stock ownership.

Even if appellant's falsehoods had been merely reckless or negligent rather than willful, they would still have supported the Commission's finding that "the continued series of misrepresentations and concealments * * * demonstrates that the applicant does not possess the necessary character qualifications of a licensee of a radio station, and that the public interest, convenience and necessity will therefore not be served by a grant of a renewal of license to the applicant." The Communications Act does not forbid the Commission to regard mere indifference to truth as contrary to the public interest. Both the Act and the WOKO case require us to affirm its decision.

[20] For a good summary and analysis of recent radio cases showing a growing trend toward stricter enforcement in just such cases as this, see Note (1947) 15 Geo.Wash.L.Rev. 425.