## INDEPENDENT BROADCASTING CO. v. FEDERAL COMMUNICATIONS COMMISSION.

### No. 10693.

United States Court of Appeals
District of Columbia Circuit.

Argued April 26, 1951.

Decided Oct. 25, 1951.

Harold E. Mott, Washington, D. C., with whom Robert L. Heald and Edward F. Kenehan, Washington, D. C., were on the brief, for appellant. Vincent B. Welch, Washington, D. C., also entered an appearance for appellant.

Mary Jane Morris, Attorney, Federal Communications Commission, and Richard A. Solomon, Attorney, Federal Communications Commission, Washington, D. C., with whom Benedict P. Cottone, General Counsel, Federal Communications Commission, Max Goldman, Asst. General Counsel, Federal Communications Commission, and Thomas H. Wall, Attorney, Federal Communications Commission, all of Washington, D. C., were on the brief, for appellee. Harry M. Plotkin, Acting General Counsel, Federal Communications Commission, Washington, D. C., also entered an appearance for appellee.

Before WILBUR K. MILLER, BAZELON and WASHINGTON, Circuit Judges.

## WILBUR K. MILLER, Circuit Judge.

The independent Broadcasting Company's application for a permit to construct a standard broadcast station (AM) at Knoxville, Tennessee, was granted by the Federal Communications Commission on October 10, 1946, without a hearing. Some two months later Independent applied for permission to construct a frequency modulation (FM) station at Knoxville. With respect to the second application, a preliminary investigation was conducted which resulted in what the Commission regarded as indications that Independent might have misrepresented some facts and concealed others in its two applications for construction permits and in other documents filed in connection therewith.

Thereafter, on July 8, 1947, Independent applied for a license to operate the standard broadcast station, which in the meantime it had constructed pursuant to its permit. The application for an FM construction permit was then still pending. Being of the opinion that neither of the two pending applications should be granted if Independent had in fact already practiced the deceptions indicated by the preliminary investigation, the Commission consolidated the application for a license to operate the AM station and the application for a permit to construct an FM station so that in a single hearing the past conduct of the applicant might be fully explored.

A hearing in the consolidated proceeding was had in October and November, 1947, after which the hearing officer filed an "initial decision" to the effect that both applications should be denied. Oral argument on Independent's exceptions was afforded. On August 11, 1949, the Commission made findings of fact upon which it based a final decision of denial. It found that Independent had misrepresented the facts with respect to the distribution of a large percentage of its common and preferred stock. The applicant had represented that fifty shares of unissued common would be sold to Marvin I. Thompson, one of the three stockholders; but in fact the unissued common stock was divided between Thompson and the other two stockholders, Rev. J. Harold Smith and his wife, who together owned the controlling interest.[1] The applicant represented that the preferred stock would be sold on the open market, but in fact it was all sold to Smith.

1. Under the original representation to the Commission, Thompson would have held (after purchasing the 50 additional shares) one hundred shares out of a total of 200 outstanding. This would have represented 50 per cent control of the company ("negative" control). As it turned out, he obtained only 33⅓ per cent of the company's stock.

The Commission further found that Independent had misrepresented Smith's assets and had represented that he had no liabilities, when in fact he owed $123,000; and that, although it was Independent's duty to reveal any substantial business enterprises engaged in by its members during the preceding five years, the applicant had not disclosed the business interests which Smith had in the Southern Bible Institute, in a newspaper called "Carolina Watchman," in a program called the "Radio Bible Hour," and in XERF, a Mexican radio station.

It was also found that Smith had used intemperate language in his writings, sermons and broadcasts; that he had a constant habit of attacking the honesty and sincerity of those individuals and groups who did not agree with him; that he had attempted to institute economic boycotts of persons and groups who did not cooperate with him as he demanded; and that he had constantly solicited funds on the basis of statements of urgent need which were contrary to fact.

From these findings the Commission concluded that Smith's character was not such as to justify it in entrusting to him the public responsibility of a broadcast licensee. For that reason, and because of the deceptions practiced, the Commission found itself unable to say the public interest would be served by granting an operating license and another construction permit. Independent appeals from the Commission's order denying it a license to operate the AM station and denying it a permit to construct an FM station.

■ The Commission's findings concerning Independent's misrepresentations and failures to make full disclosures, and concerning Smith's behavior, were made in considerable detail. No purpose would be served by reciting the evidence here. Suffice it to say that the record fully justifies and solidly supports the findings. The evidence left no doubt as to misrepresentation and concealment of pertinent factual information. It contained information showing not only that Smith had been intemperate in his writings, sermons and broadcasts, but that he was an expert in vituperation and vilification.

■ Appellant says it has been divested of the construction permit for an AM station and argues that such " * * * divestiture can be accomplished only by following the revocation procedure outlined by Section 312(a) of the Communications Act [47 U.S.C.A. § 312(a)] after compliance with Section 9(b) of the Administrative Procedure Act [5 U.S.C.A. § 1008(b)]"—a procedure not followed here. But the Commission's order did not deprive the appellant of its AM construction permit which it had already exercised by constructing a broadcast station.

Moreover, § 312(a) of the Act could have no application as it prescribes the procedure for revoking a station license, not a construction permit. The issuance of a construction permit does not guarantee a station license to the permittee, who is warned by § 319(b) of the statute that he will not be entitled to an operating license after completion of construction unless he has fully met all the terms, conditions and obligations of his application and permit, and unless it is made to appear to the Commission " * * * that no cause or circumstance arising or first coming to the knowledge of the Commission. since the granting of the permit would, in the judgment of the Commission, make the operation of such station against the public interest * * *." Contrary to Independent's contention, the causes and circumstances which impelled the Commission to the conclusion that the operation of the station would be against the public interest first came to the knowledge of the Commission after the construction permit had been granted.

■ There can be no doubt that the amply supported findings of fact warranted and justified the Commission's decision. The Supreme Court has held that a corporation's application for a station license may be rejected because of deception or concealment of facts even though the deception served no purpose and the concealed facts were immaterial; and that the innocence of some stockholders can-

not immunize the corporation from the consequences of deception. Federal Communications Commission v. W O K O, Inc., 1946, 329 U.S. 223, 67 S.Ct. 213, 91 L.Ed. 204.

Having concluded from its appraisal of Smith's character that he was unfit to assume the responsibility of a licensee, the Commission was not required to consider the qualifications of Mrs. Smith and Thompson, the other two stockholders, before concluding that the corporation could not be trusted with a license. Their innocence of wrongdoing and their good character, if established, would not offset the disqualification of Independent brought about by Smith's unfitness. F. C. C. v. W O K O, supra.

After the hearing had revealed Smith's disqualifying lack of character, he and his wife proposed to transfer all their stock to others in order to induce the Commission to grant a license to Independent. A similar proposal in the W O K O case was regarded by the Supreme Court as being unworthy of mention.

The other contentions of the appellant, all of which we have examined with care, do not impress us as requiring discussion. Under the statute and the pertinent authorities, the Commission's denial of the applications followed inevitably from its findings of fact which, in turn, were amply supported by the evidence.

Affirmed.