Burke, J.
(dissenting). The issue before this court is: whether or not there is any reasonable basis for the Liquor Authority’s denial of the application to remove to a new location. We believe there is.
In 1957 the petitioner was compelled to vacate his store in the City of Rochester when the building in which it was located was taken by the State in connection with the construction of a highway. He, therefore, applied to the State Liquor Authority for permission to transfer his license to a new location in the Town of Henrietta, near Rochester.
In accordance with procedure an investigation was made and licensed stores nearest the proposed location were notified of petitioner’s application. In addition the area of the proposed location was inspected and a map prepared by direction of the Authority. An objection was filed by a similarly licensed store near the location which stated that the public convenience did not appear to require an additional store in this area which was thinly populated.
The proposed premises are located directly across from the South Town Plaza Shopping Center, and immediately in front of the Kiddyland facility of the Plaza which has been dedicated to the entertainment of children. This shopping center, which is within a few minutes’ driving distance of four other liquor shops (three to the north in neighborhoods of the City of Rochester, <and one .to the south), has among its 25 occupants the following nationally known chain stores: J. C. Penney Co.; The Great Atlantic & Pacific Tea Co.; F. W. Woolworth; Fanny Farmer; W. T. Grant; Western Automobile and Singer Sewing *528 Machine. In denying the removal, the Authority found that this location was so close to the large modern shopping center that it would substantially enjoy the patronage of the customers and would thereby in effect become a part thereof. The Authority found that, since this licensee would serve shoppers from a number of sections of neighboring communities now serviced by existing licensees, the approval of the application would substantially affect the business being done by local package stores, and would, therefore, be disruptive of the statutory plan for their location in neighborhoods so as to best serve the public convenience and advantage. The Authority also stated that the proposed removal would be contrary to their policy (Bulletin No. 279) “ of prohibiting the location of retail wine and liquor stores in modern shopping centers as contrary to the aforesaid statutory plan recognized by the legislature ’
The Legislature has declared that its policy will ‘ ‘ best be carried out by empowering the liquor authority of the state to determine whether public convenience and advantage will be promoted by the issuance of licenses to traffic in alcoholic beverages, the increase or decrease in the number thereof and the location of premises licensed thereby ”. (Alcoholic Beverage Control Law, § 2; italics supplied.) In addition sections 101-c and 111 affirm this policy and method by express recognition of a statutory plan for the location of off-premises package stores in neighborhood communities and by limiting the removal of any licenses so issued to the discretion of the Liquor Authority (see, also, § 17).
The cases are legion wherein we have upheld administrative determinations so long as reasonably supported by the evidence. This has been especially true of determinations of the Liquor Authority in view of the express intention of the Legislature to confer a very broad discretion (Matter of Wager v. State Liq. Auth., 4 N Y 2d 465; Matter of Rockower v. State Liq. Auth., 4 NY 2d 128; Matter of Gambino v. State Liq. Auth., 4 A D 2d 37, affd. 4 N Y 2d 997). We have consistently held that judicial ‘ ‘ ‘ inquiry is limited to a determination whether the record discloses circumstances which leave no possible' scope for the reasonable exercise of that discretion in the manner of which appellant complains ’ ” (Matter of Rockower *529 v. State Liq. Auth., supra, p. 131; Matter of Wager v. State Liq. Auth., supra, p. 468), and that, therefore, we would not interfere unless the petitioner (appellant) clearly establishes that the Liquor Authority acted arbitrarily (Matter of Gambino v. State Liq. Auth., supra, p. 38).
It is clear, therefore, that a determination cannot be upset merely because we might, on the same facts, arrive at a different conclusion as to the social desirability of the location of a regulated business in a shopping center. The court cannot substitute its judgment for that of an administrative agency unless, of course, there is absolutely no basis within reason for the decision (Communications Comm. v. WOKO, 329 U. S. 223, 229; Matter of Glintenkamp v. O’Connell, 271 App. Div. 795, affd. 296 N. Y. 806).
Since the determination here as well as the regulation relied on are well within the sphere of delegated discretion and warranted by sufficient re'a'son, we should not interfere. Any such interference would flaunt the express desire of the Legislature to provide, via delegated discretion, for the most convenient and advantageous location of off-premises package stores. This policy was adopted and promulgated only after careful and conscientious consideration of the effect of the location of liquor shops in those shopping centers which are necessarily attractive to near and distant communities because of their location on principal automobile traffic arteries, their extensive parking facilities and automotive services, and varied as well as concentrated retail business operations. It is of grave concern and common knowledge that the competitive advantage afforded these centers has caused throughout the nation the untimely demise of tens of thousands of small local retail businesses. The Authority, therefore, in recognition of its duty to protect the existing neighborhood licensees and thereby provide for the public convenience and advantage, prohibits any such centrally and preferred locations at the expense of the local merchant who has invested his funds and good will in the neighborhood store in reliance upon the policies heretofore adopted. Any such preference would, of course, lead to either clandestine price-cutting and/or the eventual extinction of the local merchant, and would be detrimental to public convenience as well as inconsistent with the statutory plan and purpose expressed *530 in section 2 and reaffirmed in sections 101-e and 111 of the Alcoholic Beverage Control Law.
Of course, it may be argued that the phrase ‘ ‘ modern shopping center ’ ’ excised and analyzed out of context is difficult to define and, therefore, too nebulous a standard to guide administrative discretion. However, in context and taken in conjunction with the very reason for its promulgation, it affords a very definite standard and has obvious reference to an accumulation of nationally known shops and department stores which are attractive to distant as well as neighboring communities. It is this feature that has secured the attention and multimillion dollar investments of the leading national chain store organizations. There is no doubt that this concentrated congregation of stores, so constructed at the intersection of road networks as to accommodate thousands of mobile shoppers, has dangerously imperiled the existence of the small local merchants. Assuming, without conceding for the moment, that the phrase used to describe this operation is somewhat vague, there is certainly nothing indefinite about the impact that this and similar shopping centers have upon the smaller enterprises in nearby communities.
We should refrain from limiting any administrative agency to rules and wording calculated to precision since this in effect would deter, rather than enhance, the exercise of discretion so necessary .to reasonable and consistent determinations. The so-called ‘ ‘ all-encompassing policy ” here under review is in our opinion an exercise of sound discretion. (See Matter of Greene v. Rohan, 3 Misc 2d 680; Matter of Austin v. Rohan, 8 A D 2d 647; Matter of Buck v. New York State Liq. Auth., 8 AD 2d 851; Matter of Deitch v. Rohan, 3 Misc 2d 458.)
Although the Liquor Authority’s reliance on its general policy, per se, in no way establishes arbitrary action, its application is always subject to review. For example, if as in Matter of Dowsey v. State Liq. Auth. (8 A D 2d 724, affd. 7 N Y 2d 795) there is an arbitrary application of this policy, we may properly annul the determination. A comparison of the facts of that case with those now before us illustrates very clearly that the meaning of the term “ modern shopping center ” is ascertainable. In the Dowsey case the center (an accumulation of 12 stores, only one of which had a national reputation) was found *531 to be merely a secondary shopping area patronized substantially by local shoppers. It was quite similar to any number of ordinary business centers found in similar small communities, and was so situated so as to be unworthy of the attention of the important national stores which place their future and fortunes in what has become known as the primary shopping areas which serve numerous communities. In the case at bar a mere recital of the nationally known business stores indicates that its purpose is to provide not only for the convenience of the Town of Henrietta but also the neighboring and very prosperous suburban area of the City of Rochester, which at the present time is more than adequately served by existing neighborhood liquor licensees. An approval here would create a preference and compel an abuse of discretion since it would threaten and possibly destroy the investment of the licensees, the livelihood of their employees and the convenience offered by the existence of local shops.
Neither statute nor decisional law authorizes a usurpation of the discretion expressly delegated to the Authority (Alcoholic Beverage Control Law, § 101-c, subd. 1), or an interference with the exercise of a responsibility which the Authority owes to existing licensees and the public.
Accordingly, the order of the Appellate Division should be affirmed.
Judges Froessel, Van Voorhis and Foster concur with Judge Field ; Judge Burke dissents in an opinion in which Chief Judge Desmond and Judge Dye concur.
Order reversed, etc.