POCKET PHONE BROADCAST SERVICE, INC.,

and

Radio Relay Corporation, Delaware, Appellants,

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee,

New York Telephone Company

and

The National Association of Radiotelephone Systems, Intervenors.

RADIO RELAY CORPORATION, OHIO, Appellant,

v.

FEDERAL COMMUNICATIONS COMMISSION, Appellee,

Cincinnati Bell, Inc., Intervenor.

Nos. 74–2040, 74–2041.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 10, 1975.

Decided July 16, 1976.

Robert A. Woods, Washington, D. C., with whom Louis Schwartz and Lawrence M. Miller, Washington, D. C., were on the brief for appellants.

C. Grey Pash, Jr., Washington, D. C., Counsel, F. C. C., with whom Ashton R. Hardy, Gen. Counsel and Joseph A. Marino, Associate Gen. Counsel, Washington, D. C., F. C. C., at the time the brief was filed, were on the brief for appellee.

Guy Miller Struve, New York City, with whom Lawrence E. Walsh and Paul R. Koepff, New York City, were on the brief for intervenor New York Telephone Co. in No. 74–2040, also argued for intervenor in No. 74–2041.

James R. Adams, Cincinnati, Ohio, was on the brief for intervenor in No. 74–2041. Michael F. Haverkamp, Cincinnati, Ohio, also entered an appearance for intervenor in No. 74–2041.

Before TAMM, MACKINNON and ROBB, Circuit Judges.

PER CURIAM:

These companion cases are appeals under 47 U.S.C. § 402(b), challenging orders of the Federal Communications Commission. In No. 74–2040 Pocket Phone Broadcast Service, Inc. and Radio Relay Corporation, Delaware, appeal from an order granting the application of New York Telephone Company to construct one-way radio paging facilities in the Buffalo, New York area. No. 74–2041 is an appeal by Radio Relay Corporation, Ohio, from an order entered in a separate and later proceeding, granting an application of Cincinnati Bell, Inc. to construct similar facilities in the Cincinnati area. Because Radio Relay Corporation is the parent of Pocket Phone Broadcast Service, Inc., we refer to the appellants collectively as Radio Relay;[1] and because the

---

1. Radio Relay Corporation was organized in 1958 and since that time has been engaged in providing one-way radio paging service in New York, New York. Pocket Phone Broadcast Service, Inc. is the licensee of radio paging Station KEA–777 in Buffalo, New York. In 1968 Radio Relay became the sole stockholder of Pocket Phone and applied to the FCC for consent to the transfer of control of Pocket Phone's Buffalo facilities to Radio Relay. This consent was granted in 1969.

two cases have substantially identical factual patterns and present the same legal issues, we confine our discussion to No. 74–2040, the New York Telephone case.

The technique of one-way radio paging or signalling makes it possible to alert an individual who is away from his telephone that someone is trying to reach him. The subscriber to the service carries a pocket-sized radio receiver, and to page him a coded radio signal is transmitted which causes the receiver to emit an audible tone, thus alerting him that he is being paged. If the one-way signalling service is "tone-only" the subscriber then calls a designated telephone number, which may be that of the signalling service or some other telephone number, to learn who is trying to reach him and why. In a "tone-plus voice" signalling service a brief message will be transmitted to the receiver after the signalling tone. *See Radio Relay Corp. v. FCC,* 409 F.2d 322, 324 (2d Cir. 1969).

Authorization to use the radio frequencies allocated to suppliers of the service is available to "wireline carriers" and to "non-wireline carriers". Wireline carriers are defined as communication common carriers engaged "also in the business of affording public landline message telephone service". Non-wireline carriers or other communication common carriers are also known as "miscellaneous common carriers". 47 C.F.R. §§ 21.500, 21.501(a), (b), (c), (d), (h). New York Telephone is a wireline carrier and the appellants are non-wireline carriers.

Until 1968 the FCC allocated only four radio frequencies to wireline and non-wireline carriers for one-way signalling. In 1968, after rulemaking procedures in which Radio Relay participated, the Commission allocated four additional frequencies to these carriers. The additional frequencies were known as "guardband" frequencies because they had previously been reserved

as "guardbands" to prevent interference between adjoining frequencies. Two of the additional frequencies were allocated to wireline carriers, and two were assigned to non-wireline carriers. *See Allocation of Frequencies, etc.,* 12 FCC2d 841 (1968).

Radio Relay petitioned the United States Court of Appeals for the Second Circuit to review the allocation of guardband frequencies to wireline carriers. On the appeal Radio Relay argued strenuously that the Commission's rule permitting the entry of wireline carriers into the paging industry would destroy competition in that market. The court affirmed the Commission's decision. *Radio Relay Corp. v. FCC,* 409 F.2d 322 (2d Cir. 1969). Shortly thereafter, New York Telephone applied for a construction permit for a one-way signalling system using one of the newly allocated guardband frequencies in and around Buffalo, New York. A petition to deny this application was filed by Radio Relay which was already operating a one-way signalling system in the area on one of the previously allocated frequencies and was applying for a modified construction permit to expand its facilities.

Although four existing non-wireline carriers had 1425 one-way signalling subscribers in Buffalo, a market survey made by Strickland-Leggett Research, Inc., at the instance of New York Telephone, concluded that there was a demand for at least 9,000 additional one-way signalling units in the Buffalo area. Challenging this conclusion before the Commission, Radio Relay argued that no public need had been demonstrated for additional service, that the existing non-wireline carriers were physically capable of meeting any additional need that might exist and that the furnishing of one-way signalling service by New York Telephone would be anti-competitive.

The New York Technical Institute of Cincinnati, Inc., was formerly the licensee of radio paging Station KQC–877 in Cincinnati, Ohio. In 1968 Radio Relay applied to the FCC for permission to acquire the facilities and license for Station KQC–877. This permission was also granted in 1969.

In addition to the paging operations in New York, Buffalo and Cincinnati, Radio Relay is also licensee or parent of the licensee of paging facilities in Chicago, St. Louis, Newark, Detroit and Los Angeles.

The Commission held that New York Telephone had established a need for the service on the basis of the Strickland-Leggett study as well as "actual marketing experience in a number of other large cities where service is already offered". The FCC further held that Radio Relay's allegations of anti-competitive effects from New York Telephone's entry into the field merely repeated the generalized claims considered and rejected in the guardband rulemaking proceeding and did not justify an evidentiary hearing. 35 FCC2d 140 (1972) A petition for reconsideration was denied, 37 FCC2d 326 (1972), and Radio Relay appealed to this court. *Pocket Phone Broadcast Service, Inc., et al. v. FCC, et al.,* No. 72–2007. On May 21, 1973 the FCC moved that the case be remanded to the Commission so that it could invite the filing of additional pleadings and, if necessary, hold an evidentiary hearing. The motion was granted without opposition on May 24, 1973.

On July 30, 1973 the Acting Chief of the Common Carrier Bureau of the Commission requested counsel for Radio Relay and for New York Telephone to file supplemental pleadings addressing a number of legal issues raised by Radio Relay's arguments concerning need and competition. New York Telephone was also requested to supply further details concerning the Strickland-Leggett study. Both Radio Relay and New York Telephone filed supplemental briefs and reply briefs in response to this request. New York Telephone also filed the entire Strickland-Leggett report which it had summarized in earlier filings.

In a memorandum opinion and order issued June 19, 1974 the Commission without holding an evidentiary hearing reaffirmed its grant of New York Telephone's Buffalo application. *New York Telephone Co.,* 47 FCC2d 488 (1974). On the issue of need, the Commission rejected Radio Relay's argument that it could not consider the Strickland-Leggett report. After analyzing the information contained in the report the Commission found that Radio Relay had raised no material issue of fact concerning the report's conclusion that there was an unmet public demand for more than 9,000 additional one-way signalling units in the Buffalo area. *Id.* at 494–95. The Commission also rejected Radio Relay's argument that New York Telephone's application should be denied because the existing non-wireline carriers were alleged to be physically capable of meeting any additional demand for one-way signalling service:

> Where a prospective carrier surveys a particular market and demonstrates that substantial unsatisfied demand exists despite the presence of other carriers offering the same or similar services, his application will be granted absent some other disqualifying factor. The prospective market entrant will not be required to show that existing carriers cannot satisfy all demands for service. This rule does not operate to the disadvantage of existing carriers who identify the needs of the community in which they operate and serve those needs. Only where this is not the case is it possible for a prospective carrier to identify substantial unsatisfied demand.

47 FCC2d at 495.

The Commission held that it would "no longer apply" the standard of *Associated Telephone Answering Service,* 7 FCC2d 143 (1967) in which

> we held that a new carrier seeking entry into a market already occupied by one or more carriers was required to demonstrate that existing carriers were unable to meet the demand for service.

*Id.*

The *Associated Telephone* rule, said the Commission, "does not adequately serve the public interest standards that Congress has directed us to apply. . . . "

> Application of our former policy might allow existing carriers to exclude NYTELCO from this market while providing absolutely no assurance that the public in Buffalo would be adequately served. For this reason we find that the public interest, convenience and necessity would be served by allowing NYTELCO to develop its service in the Buffalo market. A hearing is not required on this

issue. Radio Relay has raised no substantial and material questions regarding the NYTELCO showing of need as set forth in the 1970 market survey. 47 FCC2d at 495–96.

Finally the Commission examined in detail each of the anti-competitive effects which Radio Relay argued would result from a grant of New York Telephone's application. The Commission found that with one exception these arguments merely repeated the generalized and speculative arguments which had been rejected by the Commission and the Second Circuit in the guardband rulemaking proceedings. *Id.* at 496–98. The exception was the argument that certain anti-competitive conduct by New York Telephone found in *Better TV, Inc. of Dutchess County,* 31 FCC2d 939 (1971) was disqualifying. In the *Better TV* case New York Telephone was denied a certificate of public convenience under 47 U.S.C. § 214 to construct and operate channel facilities for cable TV. The denial rested upon a finding that New York Telephone had exerted improper pressure upon cable TV operators to lease channel service rather than affect simple pole attachment agreements. The Commission in the present case concluded however that New York Telephone's conduct was not disqualifying, because it was discontinued prior to the decision in the *Better TV* case, there was no indication that it had been repeated, and the factual situation in the present case was different from that found in the *Better TV* case. *Id.* at 499. Again Radio Relay petitioned for reconsideration. The petition was denied. *New York Telephone Co.,* 49 FCC2d 264 (1974), and again Radio Relay appealed.

The opinion of the court in *Radio Relay Corp. v. FCC,* 409 F.2d 322 (2d Cir. 1969) thoroughly considered and rejected the contentions of Radio Relay that the allocation of guardband frequencies to wireline carriers would have impermissible anti-competitive effects. The same arguments which were thus rejected are now advanced by Radio Relay before us, and we likewise find them unpersuasive. Without repeating it, it is enough to say that we agree with the reasoning of the Second Circuit opinion. We add only a few words.

■ Radio Relay argues that the Commission's decision improperly relies upon "a presumed national policy favoring competition *per se*"; that the Commission "is embarking upon a concerted effort to devise procedures and policies which favor competition in every case and view with disfavor all challenges to competition by existing carriers." This presumed policy, says Radio Relay, violates the holdings of the Supreme Court in *FCC v. RCA Communications, Inc.,* 346 U.S. 86, 73 S.Ct. 998, 97 L.Ed. 1470 (1953) and of this court in *Hawaiian Telephone Co. v. FCC,* 162 U.S.App.D.C. 229, 498 F.2d 771 (1974). The Commission's opinions however clearly reflect that its decision is not based on the premise that competition is desirable for its own sake; on the contrary the Commission carefully explains that in view of the unmet need for additional one-way signalling units in the Buffalo area the entry of New York Telephone into the field is required by the public convenience and necessity. This reasoning is entirely consistent with the holdings of the two cited cases, which require only that the Commission must not assume that competition is desirable for its own sake, but must consider all the factors bearing on the public convenience and necessity. *FCC v. RCA Communications, supra,* 346 U.S. at 97, 73 S.Ct. 998; *Hawaiian Telephone Co. v. FCC, supra,* 162 U.S.App.D.C. at 234, 498 F.2d 771.

■ The Commission concluded that applicants for authority to construct paging facilities should be required to demonstrate a substantial demand for the proposed service in the market, but need not further demonstrate that other carriers cannot satisfy that demand. 47 FCC2d at 495. This was a modification of the Commission's previous policy which required a demonstration of both demand and the inability of other carriers to satisfy it. *Id.* Radio Relay complains that the "Commission provides no reasoned analysis for its abrupt departure from longstanding precedent."

We think on the contrary that the modified policy resulted from an informed and reasonable exercise of agency discretion and was correctly applied.

■ A regulatory agency is not bound "to deal with all cases at all times as it has dealt with some that seem comparable." *FCC v. WOKO, Inc.*, 329 U.S. 223, 228, 67 S.Ct. 213, 216, 91 L.Ed. 204 (1946); it may alter its past rulings and policies in light of new developments or on further consideration of a policy. *American Trucking Assns., Inc. v. Atchison, T. & S. F. Ry.*, 387 U.S. 397, 87 S.Ct. 1608, 18 L.Ed.2d 847 (1967). The agency must of course furnish "an opinion or analysis indicating that the standard is being changed and not ignored, and assuring that it is faithful and not indifferent to the rule of law." *Columbia Broadcasting System, Inc. v. FCC*, 147 U.S.App. D.C. 175, 183, 454 F.2d 1018, 1026 (1971). We believe the Commission's discussion and analysis meet this test.

[4] The Commission concluded that the policy advanced by Radio Relay would not adequately serve the public interest standards of the Act and "might allow existing carriers to exclude NYTELCO from this market while providing absolutely no assur-ance that the public in Buffalo would be adequately served." 47 FCC2d at 495–96. See also 49 FCC2d at 265–66. We cannot say this conclusion was unreasonable or that it was not a satisfactory explanation of the Commission's change in policy. Neither can we say that it was unreasonable for the Commission to conclude that because there was a demand for service, which the existing carriers had not met, Radio Relay should not be heard to clamor for government protection from a new carrier which proposed to meet the unsatisfied public demand.

Without prolonging this discussion we conclude by recording our agreement with the opinions of the Commission. The Commission exercised its judgment reasonably and plainly articulated its rationale. The Commission's orders are affirmed.

*So ordered.*