**JACKSONVILLE BROADCASTING CORPORATION, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**Florida-Georgia Television Corporation, Inc., Intervenor.**

**No. 18181.**

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 4, 1964.

Decided May 6, 1965.

Petition for Rehearing En Banc Denied June 21, 1965.

Certiorari Denied Oct. 25, 1965.
See 86 S.Ct. 186.

Burger, Circuit Judge, dissented in part.

Mr. Charles H. Murchison, Jacksonville, Fla., with whom Mr. John D. Corse, Jacksonville, Fla., was on the brief, for appellant. Mr. Robert B. Hankins, Washington, D. C., also entered an appearance for appellant.

Mr. Ernest O. Eisenberg, Counsel, Federal Communications Commission, with whom Messrs. Henry Geller, General Counsel, and Daniel R. Ohlbaum, Deputy General Counsel, Federal Communications Commission, were on the brief, for appellee. Mrs. Ruth V. Reel, Counsel, Federal Communications Commission, also entered an appearance for appellee.

Mr. Bernard Koteen, Washington, D. C., with whom Messrs. Alan Y. Naftalin and Victor E. Ferrall, Jr., Washington, D. C., were on the brief, for intervenor.

Before FAHY, Circuit Judge, BASTIAN, Senior Circuit Judge, and BURGER, Circuit Judge.

FAHY, Circuit Judge, and BASTIAN, Senior Circuit Judge:

This is an appeal by Jacksonville Broadcasting Corporation (JBC) from a decision of the Federal Communications Commission reaffirming prior grants of a construction permit and television station licenses to Florida-Georgia Television Company, Inc., the intervenor, to operate on Channel 12 in Jacksonville, Florida, and finding JBC to be disqualified from consideration.

The case was commenced in 1952 by appellant in filing an application for a construction permit for a new television broadcast station on the channel. Competing applications were filed by the City of Jacksonville and by Florida-Georgia. The Commission designated the three applications as mutually exclusive and provided for a consolidated proceeding. The hearing examiner on April 4, 1955, released an Initial Decision proposing to award the construction permit to JBC. Exceptions were filed by the two other applicants and the case was heard by the Commission on February 6, 1956. In August of that year the Commission released its final decision, granting the application of Florida-Georgia and denying the applications of JBC and the City of

Jacksonville. JBC filed a petition for rehearing and reconsideration, which was denied by the Commission on August 1, 1957. No appeal was taken from the Commission's final decision. On September 20, 1957, the Commission granted a license to Florida-Georgia and a modified license on May 22, 1959.

On August 2, 1960, the Commission by order reopened the record to determine whether the award to Florida-Georgia should be set aside as void or voidable and whether any of the parties to the proceeding should be disqualified by reason of misconduct. This action of the Commission was the result of testimony taken before the Subcommittee on Legislative Oversight, Committee on Interstate and Foreign Commerce, House of Representatives, from which it appeared that *ex parte* presentations had been made by one or more of the applicants in connection with the award of the permit in question. The Commission designated the following issues for further hearing: [1]

1. To determine whether any of the members of the Commission who participated should have disqualified himself from voting in the proceedings before the Commission which resulted in the award of a construction permit for a television station on Channel 12 in Jacksonville.

2. To determine whether any person or persons influenced or attempted to influence any member of the Commission with respect to the proceedings resulting in the award of the construction permit for Channel 12, Jacksonville, in any manner whatsoever except by the recognized and public processes of adjudication.

3. To determine whether any party to the proceedings before the Commission which resulted in the award of the construction permit for Channel 12 in Jacksonville directly or indirectly secured, aided, confirmed, ratified, or knew of any misconduct or improprieties in connection with the proceedings.

4. To determine, in the light of the facts adduced upon the foregoing issues, whether the grant heretofore made of a construction permit for Channel 12, Jacksonville, was void *ab initio* and if not, whether such grant is voidable and action should be taken to set it aside; whether any of the applicants in this proceeding was and is disqualified to receive a grant of its application; and whether the conduct of any applicant, if not of a disqualifying character, has been such as to reflect adversely upon such applicant from a comparative standpoint.

All applicants in the original proceeding were permitted to participate as parties in the reopened proceeding, and opportunity was provided to any persons against whom evidence might be received to cross-examine and to submit rebuttal testimony. The Attorney General of the United States was permitted to participate as *amicus curiae*.

On April 11, 1962, the hearing examiners released their Initial Decision, holding that former Commissioner Richard A. Mack should have disqualified himself from participating in the original decision because of his *ex parte* discussions of the merits of the competing applicants while the original proceeding was pending before the Commission; further, that the City of Jacksonville and JBC should be disqualified from further consideration because of attempts made by persons identified with those parties to influence the Commission; and that Florida-Georgia was not shown by the evidence to be disqualified. By reason

1. The Commission appointed the Chief Hearing Examiner as presiding officer of the hearings. Later, the parties agreed that he would be assisted in the preparation of his report by Hearing Examiner Chester F. Naumowicz, Jr.

of Commissioner Mack's conduct, the original decision of August 31, 1956, was held to be void *ab initio* and the grant then made to Florida-Georgia was set aside. However, in view of the fact that they found no impropriety to have been committed by Florida-Georgia, the examiners held that the public interest, convenience and necessity would be served by authorizing the continued operation of the television station by Florida-Georgia pending final disposition by the Commission.[2]

Appeal was taken to the full Commission, which, on September 16, 1963, with the unanimous vote of the four Commissioners voting, note 2, *supra*, released its final order. The Commission adopted most of the hearing examiners' conclusions, disagreeing, however, with the disqualification of the City of Jacksonville. But the City has voluntarily withdrawn and its application need not be considered.

The Commission agreed with the examiners that Commissioner Mack should have disqualified himself from the deliberations and decision in the original case and that the original grant to Florida-Georgia was invalid and should be set aside. It also concluded,

> that in any further proceedings to be had in connection with the subject applications, JBC is disqualified from consideration because of attempts by individuals identified with it to influence the Commission through methods outside the recognized and public processes of adjudication. City and Fla-Ga, on the other hand, are not shown by the evidence to be disqualified from further consideration and nothing in this record may be held to reflect adversely on their applications.

Finally, upon a complete review of the entire record, the Commission ordered,

That the Commission's Decision of August 31, 1956, insofar as it granted a construction permit to Florida-Georgia Television Company, Inc., is *nunc pro tunc* READOPTED; The Commission's grants of station licenses on September 20, 1957 and February 12, 1958 are, *nunc pro tunc*, AFFIRMED; and the application of Florida-Georgia Television Company, Inc., for renewal of television station license for WFGA-TV, Jacksonville, Florida filed November 30, 1960, insofar as it has been continued in a deferred status by reason of the questions raised in this proceeding, IS REMOVED from such deferred status, without prejudice to any other causes for deferral imposed by Commission processes.

■ I. The order of the Commission disqualifying JBC is affirmed. The evidence of record amply supports the findings of the Commission that this applicant through its President, who was a controlling stockholder and director, in the language of the examiners, adopted by the Commission, sought outside influence,

> to induce the Commission to exercise its ultimate decisional authority to adhere to the original instructions given its staff to prepare a decision upholding the grant contemplated by the Initial Decision of the Hearing Examiner, irrespective of the significance which might be drawn by the Commission from its analysis of the evidence and the exceptions of the competing applicants and oral argument thereon.

We need not go into the details of the substantial evidence to that effect, justifying the finding and conclusion of disqualification. WKAT, Inc. v. Federal Communications Comm., 111 U.S.App. D.C. 253, 261, 296 F.2d 375, 383, cert.

---

2. On the original action of the Commission in 1956, Commissioners Hyde, Doerfer, Lee and Mack voted to adopt the decision; Commissioners McConnaughey and Bartley dissented; Commissioner Craven abstained. On the 1963 order, Commissioners Henry, Hyde, Bartley and Ford voted to adopt the decision; Commissioners Cox and Loevinger did not participate; Commissioner Lee was absent.

denied, 368 U.S. 841, 82 S.Ct. 63, 7 L. Ed.2d 40. The action of the Commission was altogether within its responsibility to administer the statute in the public interest.

II. The Commission contends that its disqualification deprives JBC of standing to contest the grant to Florida-Georgia, though the Commission does not move for dismissal of the appeal. In any event, we think JBC's disqualification does not preclude our review of the grant to Florida-Georgia. JBC had standing to bring the case here. In considering its appeal from denial of the grant to it, and from the grant to Florida-Georgia, a competitor for the channel, JBC based its case in good part upon its claim that the Commission used a double standard on the issue of disqualification—one as to it and another as to Florida-Georgia. On JBC's appeal we are brought face to face with this and other problems as they bear upon the grant to Florida-Georgia. We are not required to abandon full consideration of these problems at the point where we uphold the Commission in finding JBC disqualified for grant of the channel to it. The whole case is then in process of decision and our review of it may be completed on all issues.

III. Intervenor Florida-Georgia, but not the Commission, would have us dismiss the appeal on a different ground. It points out that in October 1960 JBC undertook to assign to a partnership composed of its stockholders all interest in its application, shortly after which, on December 27, 1960, the corporate JBC was dissolved.[3] During the proceedings before the hearing examiners JBC made known its change in business form by filing a petition to amend its application. The hearing examiners stated that "the Commission itself does intend that the Jacksonville Broadcasting Corporation successors shall participate as respondents here" and that they would "defer action indefinitely on the petition to amend and permit this group now representing Jacksonville Broadcasting Corporation or its successors to participate as respondents in the proceedings." Counsel for Florida-Georgia stated he had no objection to the participation of the JBC group at that time. No further action was taken to change the nature of the appearance of record and the JBC group participated in the hearing, all pleadings being in the name of JBC. When the Initial Decision was rendered, the examiners denied the petition to amend the application, apparently believing it to be a futility in view of the disqualification of JBC.

After the examiners' decision JBC filed a notice of appearance indicating an intention to participate in oral argument before the full Commission. Florida-Georgia objected on the ground that the corporation had ceased to exist. The Commission declined to rule on the merits of this contention but denied Florida-Georgia's objection, stating:

> Suffice it to say that an entity styling itself "Jacksonville Broadcasting Corporation" has participated in this hearing thus far as a party respondent with the consent of all parties and has duly filed exceptions to the Initial Decision. Such entity, in the interests of a full record, will be permitted to argue such exceptions.

The "entity" continued to participate in the proceedings. When the Commission issued its final decision and order it declined to pass upon the corporation's continued status and related matters, stating that in view of its decision concerning the *ex parte* conduct of JBC it was unnecessary to do so, and since such conduct antedated the application the Commission concluded these questions had become moot. In this posture

---

3. The original proceedings had eventuated in 1956 with the award of the permit to construct the station on Channel 12 to Florida-Georgia. JBC participated in those proceedings but did not appeal from that decision. This did not preclude it from participating in the later proceedings if it was properly in them, as we hold to be the case.

of the case the Commission affirmed the examiners' denial of JBC's petition to amend its application.

The appeal to this court is by the "entity" which had sought and been denied the right to the amendment but was allowed to press its case in all respects without regard to its internal status. Rather than dismiss its appeal for failure of the Commission to straighten out the matter in better fashion we give JBC the same "entity" status the Commission gave it. In the circumstances presented the relation of this court to the administrative process must be construed as sufficiently accommodating to authorize the court on the appeal of JBC to consider on the merits the decision of the Commission restoring the grant of the construction permit and licenses to Florida-Georgia, contested by the "entity." [4]

■ IV. Finding that the *ex parte* representation in favor of Florida-Georgia could not be traced to its principals, or attributed to them, the Commission *nunc pro tunc* readopted the decision in favor of Florida-Georgia, made August 31, 1956, which it had reopened by its order of August 2, 1960. The Commission did not use a different standard with respect to Florida-Georgia from that it used in finding JBC disqualified. The factual situation affecting the two applicants, carefully analyzed by the Commission, was itself different in the important respect that the principals of JBC were responsible for the extra-judicial attempts to influence the Commission, while Florida-Georgia was found not to be responsible for the overtures in its favor. We are not persuaded that this factual decision of the Commission exonerating Florida-Georgia from wrongdoing in the respects here in issue should not be accepted by this court. The Commissioners who participated in this conclusion, note 2, *supra*,

upon a careful review of the evidence, were unanimous. We accept their findings under the rule applicable to the scope of our review.

■ V. We do not agree, however, that the grants to Florida-Georgia should have been restored to their original status. Though Florida-Georgia was not disqualified the decision of August 31, 1956, awarding the construction permit to it, followed in due course by licenses, must be held to have been influenced by the *ex parte* representations made for its benefit, even though the principals of Florida-Georgia were innocent of such representations. Such innocence saves Florida-Georgia's qualification but does not validate grants which are the product, in part at least, of the wrongful influences brought to bear upon the result reached by the Commission in its favor. The original grant of August 31, 1956 was invalid by reason of these influences. Apparently the Commission's reason for readopting its original decision was that it thought Florida-Georgia was the only qualified applicant remaining in the case. This fails to take into account the invalidity of the original decision. The public interest cannot be reconciled with leaving in effect grants which on this record we must hold were in significant part the result of extra-judicial representations and influences. In applying the public interest standard the decision that an applicant is not disqualified because innocent of such extra-judicial activities solves only part of the problem. The activities exerted for the benefit of the applicant undermine the validity of the consequent grant to it.

The result is that the present restoration to Florida-Georgia of the construction permit authorized August 31, 1956, and ensuing licenses, must be set aside. Since the decision upon which they rest was originally invalid, the decision and its progeny remained invalid and could not be readopted as valid.

4. We have considered the contentions that Florida law prohibits the continuation of a corporate body such as JBC after its dissolution for the purposes of obtaining a television license. But without reaching a conclusion on this point we hold for the reasons we give that the motion to dismiss should not be granted.

This leaves the channel free to be applied for by any qualified applicant. Jacksonville Broadcasting Corporation, its former officers and directors, the partnership and its members, are excluded because disqualified; but Florida-Georgia is not; for though the existing grant to it must be set aside it has not been disqualified and may compete, but on a completely equal and in no sense a preferred basis, with any other applicant who might apply. Cf. WORZ, Inc. v. Federal Communications Comm., 120 U.S.App.D.C. ——, 345 F.2d 85.

The motion to dismiss the appeal is denied. The order of the Commission is affirmed insofar as it relates to the disqualification of JBC. Insofar as it relates to the qualification of Florida-Georgia the order is also affirmed. The order is set aside insofar as it readopted the Decision of August 31, 1956, and insofar as it affirms the grant of station licenses made September 20, 1957, and February 13, 1958, and renewal of station license for WTBA-TV, November 30, 1960. The case is remanded to the Commission for further proceedings not inconsistent with this opinion.

As authorized in WORZ, *supra,* authority for continued operation may be granted by the Commission in its discretion pending such further proceedings.

It is so ordered.

BURGER, Circuit Judge (concurring in part and dissenting in part):

I concur in the majority's treatment of the standing [1] and jurisdiction [2] issues and in their affirmance of Jacksonville Broadcasting's disqualification. And I agree with the broad proposition relied on by my colleagues that our scope of review of Commission action is limited. In observing those limits we are often compelled to affirm agency action on records which could well have led us to a different, even a completely opposite, conclusion. But this case, to me, falls within that narrow area where we ought to reverse Commission action because the very basis of the Commission's choice to disqualify one, while refusing to dis-

1. The Commission relies upon our decisions in Simmons v. FCC, 79 U.S.App.D.C. 264, 145 F.2d 578 (1944), and Mansfield Journal Co. v. FCC, 84 U.S.App.D.C. 341, 173 F.2d 646 (1949), for the proposition that Appellant has no standing to raise the propriety of the Commission's failure to disqualify its competitor, Florida-Georgia, if the record contains substantial evidence to support its own disqualification. The latter case is not in point, however, since it held merely that one applicant was not aggrieved by the award of *non*-mutually exclusive authority to another. And *Simmons* is readily distinguishable. There we found that an applicant whose antenna placement would be a hazard to air navigation had no standing to challenge a mutually exclusive award to another, since its own application could not be granted in any event. The clearly correct decision in that case does not automatically govern the present facts. For the instant situation goes to the integrity of the Commission's processes in a fundamental manner. As we said in WKAT, Inc. v. FCC, 111 U.S.App.D.C. 253, 261, 296 F.2d 375, 383, cert. denied, 368 U.S. 841, 82 S.Ct. 63, 7 L.Ed.2d 40 (1961):

Surreptitious efforts to influence an official charged with the duty of deciding contested issues upon an open record in accord with basic principles of our jurisprudence eat at the very heart of our system of government—due process, fair play, open proceedings, unbiased, uninfluenced decision. He who engages in such efforts in a contest before an administrative agency is fortunate if he loses no more than the matter involved in that proceeding.

The public interest clearly requires Appellant to be permitted this appeal—if for no other reason than the possibility that this court might have concluded to tell the Commission that it must begin all over again from the beginning. When a regulatory agency so far departs from protecting the public interest, some means must be found to ventilate the processes employed.

2. I do not think that Southwestern Publishing Co. v. FCC, 100 U.S.App.D.C. 251, 243 F.2d 829 (1957), requires a contrary result. We there dismissed an appeal by an injured subsidiary which had not been a party to the litigation conducted by its parent corporation at the Commission. That case involved a real difference in parties not present here.

qualify the other, of two applicants is untenable because a distinction between the two is without substantial record support. The Commission disqualified the Jacksonville group because of attempted but *unsuccessful* efforts to reach the Commission by ex parte contacts although the bulk of the evidence on this score relied upon by the Commission shows that the objective of these contacts was to urge the Commission to *disregard* political considerations and decide the case on its merits and on the record evidence. I do not challenge the Commission's power to draw their own inferences, even though I might read that evidence as of a less "sinister cast" than do they. What I see as grave error is the use of a double standard in evaluating misconduct.

Using two standards, as I see it, the Commission found no fault in the successful applicant, who is reasonably shown on this record to have been guilty of conduct at least as objectionable as that which disqualified Appellant. I would not try, however, to balance an appraisal of comparative misconduct, but would disqualify *both* applicants; I make comparisons only to illustrate what seems to me the irrationality of the Commission's conclusions and to demonstrate that it employed a double standard of ethics. It is important that this be spelled out.

The Commission's wrath was directed at Jacksonville Broadcasting Corporation in part because to Jacksonville's subsequent knowledge Congressman Herlong called the late Commissioner Mack, his fellow Floridian, to inquire about rumors that political influence was about to lead the Commission to reverse the award to Appellant under the Examiner's preliminary report at that time tentatively approved by the Commission. Congressman Herlong was so disturbed by Mack's ensuing confession of misconduct that he at once reported the incident to the Chairman of the Committee on Legislative Oversight of the House Inter-

state and Foreign Commerce Committee. Later, in testifying before the Commission, the Congressman said Commissioner Mack had told him he, Mack, had committed himself to vote for the "Mitch Wolfson" group, Intervenor here, that he had made this commitment before coming to Washington to sit on the case, and that he had to stand by his commitment.

To read sinister implications into Congressman Herlong's actions, which the Congressman promptly made a matter of public record to his colleagues, is at least surprising. I suppose it not unlikely that it was Herlong's disclosures to Congress which led the Commission to recall and reopen the case on its own motion. Mitchell Wolfson, a dominant figure of the Intervenor, who controls three other Commission licensed communications channels,[3] testified that he had not sought or received any ex parte prehearing commitment from Mack. Although the supplemental Commission hearings were held at a time when Commissioner Mack was available, he was not called. The Commission was therefore faced with solid and credible evidence from a member of Congress that he had been told by Mack of an obviously illegal advance commitment to support the Intervenor regardless of the evidence. The only evidence tending to meet this grave accusation was Wolfson's testimony that *he*, Wolfson, had no knowledge of the matter. We are left by the Commission to assume that Mack made this commitment to the Wolfson group without any request—or inducement—from Wolfson or one of his associates. That Wolfson and Mack had contacts with each other is suggested by the "Dear Mitch. * * Sincerely, Dick" letter in which Mack thanked Wolfson for gifts of "liquid refreshments" and "flowers * * * and delicacies" sent to Commissioner and Mrs. Mack. There is also evidence that various politically prominent Florida personages and Washington lawyers had made known their views to the Commis-

3. R. 7133–7134.

sion indirectly in support of Intervenor and in opposition to Appellant. I cannot take seriously any suggestion that this was exclusively the innocent activity of public spirited citizens with no "ax to grind" after the sordid history of this case had become well known to Congress and the public. Indeed the Office of the General Counsel of the Commission, after detailed analysis of the evidence developed at the reopening hearing, concluded that principals of Florida-Georgia were "inextricably" involved in these activities and accordingly recommended Florida-Georgia's disqualification to the Commission. See Reply Brief for Appellant, pp. 2–3.

It has been rare for this court in its holdings, or even for individual members in dissent, to undertake re-examination of the weight of evidence before the Commission, and this process has been generally limited to situations where applicants engaged in grossly improper activities in pursuit of their applications. (See e. g., Massachusetts Bay Telecasters, Inc. v. FCC, 104 U.S.App. D.C. 226, 261 F.2d 55 (1958); WORZ, Inc. v. FCC, 106 U.S.App.D.C. 14, 268 F.2d 889 (1959), and other remand cases). But here the Commission has made a finding that one applicant is disqualified while another is given a "clean bill" in the face of evidence of ex parte contacts by the successful party at least as offensive as—and in my view worse than—those penalized by the Commission. My conclusions on "comparative misconduct" are not based on a re-evaluation of credibility of witnesses, for appellate judges are not free to engage in such excursions; credibility is for fact finders. Rather my conclusions rest on undisputed evidence; this is highlighted by the failure of the Commission even to ask Commissioner Mack for his version of the conversation with Herlong or whether he had been approached by anyone for the Wolfson group. The testimony of Congressman Herlong as to Commissioner Mack's statements to him stands unchallenged; the Commission did not in any way cast doubt on Herlong's testimony.[4] Mitchell Wolfson's testimony can do no more than afford a basis for a finding—if he was believed—that he, *Wolfson*, secured no ex parte commitment from Mack. The circuitous methods of those who engage in backdoor communications with the Commission are all too familiar to us and the Commission's failure even to invite Mack to clear up this grave charge, which goes to the very heart of the disputed issue here, casts

4. The Commission neatly disposed of Mack's statement to Herlong by saying, "Commissioner Mack's statement to Congressman Herlong forms the basis of a finding only that he made the statement, and not as to its accuracy. With respect to Wolfson and Florida-Georgia, the statement is hearsay and incompetent to form the basis of a finding of fact." What astonishing sophistry! Indeed what impertinence! As a matter of technical evidence law, of course, Mack's statement would be admissible *against him* as a party admission, were he a litigant, but inadmissible (except in some jurisdictions) *against others* as not strictly a common-law "declaration against interest."

But the Commission is not bound by such nice evidentiary distinctions and indeed does not ordinarily stand on them; it is permitted—in fact *required* in the public interest—to consider reliable evidence which might be inadmissible in court. The statement attributed to Mack was quickly made a matter of public record by a member of the United States Congress whose version was not shaken by cross-examination at the Commission hearings. And certainly Mack's statement—amounting to a confession of misconduct on his part made to a close acquaintance—was not one to be lightly made. I am not impressed by the suggestion made by counsel for Intervenor at the hearings and adopted in the Commission's brief before us that Mack told a "little white lie" in order to be rid of an annoying phone call. Rubbish! Even if the Commission's hypersensitivity concerning hearsay could justify its refusal to give any weight to the Herlong-Mack incident as against Intervenor, its zeal for strict evidentiary niceties cannot excuse its failure to pursue the subject further by calling upon Mack for an explanation. Mack presumably did not make a commitment to the birds in the tress but to flesh and blood men.

an indelible shadow over the entire process.

I repeat that I would not venture to balance the misconduct of Appellant against that of Intervenor for the purpose of giving the award to Appellant rather than Intervenor. But I can find no record basis for the Commission to hold that the rather bumbling and naive efforts of Appellant to find out who was "undermining its award" was evil beyond redemption, while Intervenor was blameless. Under a single standard of conduct both Appellant and Intervenor— or neither—should have been disqualified.

I would remand to the Commission with directions to vacate its award to the Intervenor and begin anew with both Intervenor and Appellant disqualified along with all shareholders of either who hold a substantial amount of stock. Only by such a process can we cleanse this award of its long and unsavory background.

Wright, Circuit Judge, dissented from affirmance of convictions of first-degree murder.

Wilbur K. Miller and Bastian, Senior Circuit Judges, and Danaher and Burger, Circuit Judges, dissented from setting aside of death sentences and from directions that each defendant be resentenced to life imprisonment.