COMMUNITY FIRST CORPORATION,
Appellant,

v.

FEDERAL COMMUNICATIONS COM-
MISSION, Appellee,

Florida-Georgia Television Co., Inc.,
Intervenor.

The NEW HORIZONS TELECASTING
COMPANY, Inc., Appellant,

v.

FEDERAL COMMUNICATIONS COM-
MISSION, Appellee,

Florida-Georgia Television Co., Inc.,
Intervenor.

Nos. 21253, 21257.

United States Court of Appeals
District of Columbia Circuit.

Argued March 4, 1968.

Decided Sept. 3, 1968.

Mr. Edward P. Morgan, Washington, D. C., attorney for appellant in No. 21,-253, argued on behalf of both appellants.

Mr. John H. Conlin, Associate General Counsel, Federal Communications Commission, with whom Messrs. Henry Geller, General Counsel, and Edward J. Kuhlmann, Counsel, Federal Communications Commission, were on the brief, for appellee. Mrs. Lenore G. Ehrig, Counsel, Federal Communications Commission, also entered an appearance for appellee.

Mr. Alan Y. Naftalin, Washington, D. C., with whom Messrs. Bernard Koteen and Arthur B. Goodkind, Washington, D. C., were on the brief, for intervenor.

Messrs. Frank U. Fletcher, Robert L. Heald and Edward W. Hummers, Jr., Washington, D. C., were on the brief for appellant in No. 21,257. Mr. Marvin Rosenberg, Washington, D. C., also entered an appearance for appellant in No. 21,257.

Before BASTIAN, Senior Circuit Judge, and BURGER and TAMM, Circuit Judges.

BURGER, Circuit Judge:

In 1952, Florida-Georgia Television Company, Inc. (Florida-Georgia) applied for a construction permit for channel 12, a VHF television channel assigned to Jacksonville, Florida. After a comparative hearing with two other mutually exclusive applications for channel 12—those of Jacksonville Broadcasting Corporation and the City of Jacksonville—the Commission awarded the construction permit to Florida-Georgia in 1956. No appeal was taken from this award. Florida-Georgia began to operate the station in September, 1957. In that month, the Commission issued a license to Florida-Georgia which was renewed

in 1958 and modified in February, 1959, to expire on May 22, 1961.

In the meantime, testimony before a subcommittee of the Committee on Legislative Oversight of the Committee on Interstate and Foreign Commerce of the House of Representatives revealed that *ex parte* representations concerning the applicants for this license may have been made to one of the Commissioners at the time the applications were before the Commission. For this reason, the Commission reopened the record to determine whether the award to Florida-Georgia should be set aside by reason of any misconduct. In September 1963, the Commission decided that Jacksonville Broadcasting Corporation was disqualified by reason of such representations but found that Florida-Georgia was not disqualified because of an absence of evidence that these representations were authorized by Florida-Georgia. In so doing, the Commission partly reversed the findings of the trial examiner, who had found both parties disqualified by the representations. The Commission then readopted its decision granting Florida-Georgia a construction permit, and reaffirmed its grants of licenses to Florida-Georgia. Jacksonville Broadcasting Corporation appealed to this court from these decisions.

This court ordered that the construction permit and license grants to Florida-Georgia must be set aside. Finding support for the Commission's conclusion that the *ex parte* representations in support of Florida-Georgia could not be traced directly to it so that the Commission could find Florida-Georgia was not disqualified in an absolute sense, this court nevertheless decided that the representations must have influenced the decision and the decision itself was consequently invalid. Therefore, a new proceeding open to any qualified applicant was required to determine which applicant should be authorized to operate channel 12 and in that proceeding Florida-Georgia was to "compete * * * on a completely equal and in no sense a preferred basis * * *." Jacksonville

Broadcasting Corp. v. FCC, 121 U.S.App. D.C. 69, 75, 348 F.2d 75, 81, cert. denied, 382 U.S. 893, 86 S.Ct. 186, 15 L.Ed.2d 150 (1965). As in the *WORZ* case [WORZ, Inc. v. F. C. C., 120 U.S.App.D.C. 191, 345 F.2d 85], the court stated that the Commission could authorize continued operation of the station, in its discretion. *Ibid.*

On remand, the Commission opened the proceedings for new applicants, vacated all prior awards to Florida-Georgia, and authorized Florida-Georgia to continue its operation of channel 12, such operation to be "without prejudice to, and constitute no preference in, any aspect of any proceeding to be held with respect to Channel 12, in Jacksonville, Florida." 1 F.C.C.2d 1375. Four parties applied for permanent authority: Florida-Georgia, Community First Corporation (Community First), The New Horizons Television Company (New Horizons), and Florida Gateway Television Company (Florida Gateway). Community First and Florida Gateway each also applied for interim authority to operate channel 12 and offered to permit any other applicant for permanent authority to participate on an equal basis in the interim operation. New Horizons filed a letter offering to participate in any approved interim operation and joined the two applicants for interim authority in petitioning the Commission to determine that the public interest required joint interim operation and requesting the Commission to establish guidelines for such operation. The Commission denied these applications and again authorized the continued interim operation by Florida-Georgia. The Commission stated:

As we pointed out in *Consolidated Nine*, a joint interim operation, has the serious drawbacks of requiring a substantial investment in new facilities and the bringing together of a management group consisting of adversary parties. Joint operation by conflicting parties to a hearing is inherently undesirable because it is not conducive to satisfactory long range planning, leaves responsibility in doubt, and does

not provide a sound basis for incentive to make efforts to serve the community needs. Our experience with joint interim operations indicates that this arrangement may serve to delay the outcome of the comparative hearing, and that it provides poorer management than station operation under the control of one party. An interim authorization is primarily useful when there is no existing service, or where an existing licensee has been disqualified. In light of these considerations, we are faced with the choice of continuing an existing service or using the extraordinary remedy of making a conditional grant under Section 1.592(b) of the Rules. We are of the view that the public interest lies in continuing the existing service of Florida-Georgia. * * *

Florida-Georgia Television Company, Inc., 10 Pike & Fischer R.R.2d 839, 844 (1967).

Here, even more than in *Consolidated Nine,* Consolidated Nine, Inc. v. FCC, 131 U.S.App.D.C., ——, 403 F.2d 585, decided Sept. 3, 1968, these parties were "trapped" by the Commission's own rules. Although both Community First and Florida Gateway made individual applications for interim authorization, they included in their applications a provision, consistent with their interpretation of rule 1.592(b), that any other applicant could join in their interim operation. The Commission pointed out that rule 1.592 actually required a joint application by two or more applicants. However, since they apparently would agree to pool forces if given an interim grant, the Commission treated these applications as complying with rule 1.592 (b). Id. at 841. It then rejected their applications, in part because it found the requirements of its own rule that the applications propose a *joint* interim operation to be "inherently undesirable."

In other regards as well, this case is a factual twin of *Consolidated Nine.* The proposals for interim operation here also would require construction of new facilities (also proposed on a "crash"

basis and also because it was anticipated that the facilities of the present operator would not be available for lease or sale) and the cost of construction and operation would be greater than the estimated first-year revenues.

For the reasons stated in *Consolidated Nine,* this case must be remanded to the Commission with directions to vacate the interim grant to Florida-Georgia until an interim grant has been made in accordance with that opinion or until the comparative hearing process has resulted in the grant of a regular license. We retain jurisdiction pending further proceedings before the Commission.

So ordered.