98 F.3d 646
 321 U.S.App.D.C. 197
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
Maria M. OCHOA, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Foothills Broadcasting, Inc., Intervenor.
 Nos. 95-1092, 95-1444.
 United States Court of Appeals, District of Columbia Circuit.
 Sept. 23, 1996.
Suggestion for Rehearing In Banc Denied Nov. 27, 1996.
 
 On Appeals from a Decision of the Federal Communications Commission.
 F.C.C.
 AFFIRMED.
 Before: WALD, WILLIAMS and GINSBURG, Circuit Judges.
 
 JUDGMENT
 
 1
 These causes came to be heard on notice of appeal of a Decision of the Federal Communications Commission, and were briefed and argued by counsel. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir.Rule 36(c). For the reasons stated in the accompanying Memorandum, it is
 
 
 2
 ORDERED and ADJUDGED, by the Court, that in Nos. 95-1092 and 95-1444, the Decision of the Federal Communications Commission is affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely-filed petition for rehearing. See D.C.Cir.Rule 41(a).
 
 ATTACHMENT
 MEMORANDUM
 
 4
 Maria M. Ochoa appeals from a Decision by the Federal Communications Commission ("FCC") Review Board affirming the disqualification of her application for a license to run an FM-radio station in Lenoir, North Carolina. The Administrative Law Judge ("ALJ") who presided over the evidentiary hearing, in which competing applications for the station license were examined, disqualified Ochoa after a special hearing called to consider rebuttal testimony to statements made by Ochoa in direct examination revealed that Ochoa had engaged in misrepresentation and prevarication under oath. The ALJ disqualified Ochoa without designating a specific character issue against her, finding that such a designation was unnecessary since "[a]n implicit character issue exists with respect to the truth and veracity of every witness who is a principal in a hearing case." Maria M. Ochoa, 7 F.C.C. Rcd 1861, 1866 (p 82) (ALJ1992). Following Ochoa's disqualification, the station license was granted to another applicant, Foothills Broadcasting ("Foothills"). In addition to challenging the FCC's decision to disqualify her without designating a specific character issue, appellant Ochoa claims that her disqualification was invalid because the FCC applied disparate standards to her application and Foothills' application with regard to misrepresentation and lack of candor. Finally, she challenges the FCC's grant of the license to Foothills, also on the grounds that the FCC improperly applied disparate standards to the two applicants. We affirm the Review Board's decision to uphold the ALJ's decision to disqualify Ochoa for lack of candor without designating a specific character issue. Moreover, we find that Ochoa failed to produce any significant evidence that the FCC applied disparate standards to the applications of Foothills and Ochoa. For that reason, appellant also lacks standing to challenge the FCC's grant of the station license to Foothills.
 
 
 5
 At the time of her application for the Lenoir license, appellant was employed as a general sales manager at Station WMXC-FM in Charlotte, North Carolina. In order to gain an advantage in the license competition, she pledged to leave WMXC if her application were granted, to move to Lenoir, and to manage the new station full time. The FCC looked favorably upon applicants who proposed to integrate their ownership with the on-site daily management of the station at issue.[1]
 
 
 6
 During the course of an evidentiary hearing, in which three of the original eight applicants for the station participated (the other five having been dismissed early in the proceedings), Ochoa claimed that she had told her co-workers at WMXC of her commitment to move to Lenoir if she were granted the license. On cross-examination, she specifically denied ever telling the general manager of WMXC, Jake Gurley, that she actually intended to dismiss her application in exchange for a monetary settlement, or that, if her application were granted, she would sell the station. See Transcript ("Tr.") 82, 113-17. Appellant was shown a sworn statement in which Gurley contradicted her testimony, but she did not alter her testimony. Tr. 116-17.[2]
 
 
 7
 As a result of this sharp conflict in testimony, the ALJ scheduled an extraordinary hearing session for the taking of rebuttal testimony. Tr. 240-43, 433-36, 582. At the outset of the rebuttal hearing, the ALJ made clear that the purpose of the hearing was to resolve the contradictions in testimony, and he called upon counsel for both parties to provide additional information:
 
 
 8
 JUDGE MILLER: ... [W]e are here today to take the rebuttal testimony on integration representation set out at page 2 of Ochoa Exhibit 1. That representation reads: "Ochoa proposes to move to Lenoir in the event of grant of her construction permit."
 
 
 9
 We have already had some testimony regarding that representation. We have Reta [sic] Thorne's testimony and we have some testimony from Maria Ochoa.
 
 
 10
 That testimony, as I read it, is directly contradictory. I have gone over it again to be sure that that is so. Consequently, I granted Mr. Bernard's rebuttal request and, also, called on Mr. Yelverton [Ochoa's counsel] to make any further showing regarding that representation that he felt was necessary, and that's what we are going to do this session.
 
 
 11
 Tr. 582.
 
 
 12
 During the course of the rebuttal hearing, Jake Gurley and three other WMXC employees all testified that Ochoa had told them that she would not leave WMXC as a result of the FCC licensing proceedings. Tr. 359-61, 368, 372-73, 377-78 (Rita Thorne), Tr. 603-06 (Edward Jablonski), Tr. 653-54, 659 (Jake Gurley), Tr. 743-44 (Susan Litaker). Ochoa called four opposing witnesses, who testified that Ochoa said she would in fact move to Lenoir if the license were granted, but did not say anything about what she had told her co-workers about her intentions.
 
 
 13
 After hearing the damaging testimony of all four co-workers, ALJ Miller confronted Ochoa with the irreconcilable conflict in testimony when Ochoa again took the stand:
 
 
 14
 JUDGE MILLER: Let me pose the question to you a little differently, Mrs. Ochoa. Now we just went through and you said, no, I never told Jake Gurley that. You were in the hearing room when Reta [sic] Thorn testified that you had said that you did not intend to move to Lenoir. You were in the hearing room when Johnny Jacobs said that you told him that you never intended to move to Lenoir. And I believe you--yes, you were in the hearing room when Susan Litaker said that you told her you never intended to move to Lenoir.
 
 
 15
 Are you telling me, the fellow has got to write the decision in this case, that those people are wrong, all four of them?
 
 
 16
 Tr. 1016. When pressed repeatedly by the ALJ, Ochoa eventually conceded that she had in fact purposely downplayed her intentions of moving to Lenoir from her co-workers at WMXC in order to protect her job at that station in case her application failed. Tr. 1015-16, 1019-20.
 
 
 17
 After the rebuttal hearing, ALJ Miller concluded that Ochoa had deliberately tried to mislead the FCC in her direct testimony and that she would be disqualified on that basis from the license competition. He acknowledged that no character issue had been specifically designated against Ochoa at the evidentiary hearings, but he found that omission not controlling since all principals at a hearing who testify under oath should be on notice that the truth and veracity of their testimony is always an issue in the proceeding. See Maria M. Ochoa, 7 F.C.C. Rcd at 1866, p 82 (ALJ1992) (Joint Appendix ("J.A.") 327).
 
 
 18
 The Review Board affirmed the ALJ's findings and conclusions against Ochoa. See Maria M. Ochoa, 9 F.C.C. Rcd 6569 (Rev.Bd.1992). Ochoa's petition for reconsideration was unsuccessful. See Maria M. Ochoa, 9 FCC Rcd 56, 57-59, p 10-19 (1993) (J.A. 343, 344-46). A second petition for reconsideration was dismissed as repetitious and unauthorized. See Maria M. Ochoa, 10 F.C.C. Rcd 142 (1995) (J.A. 357).
 
 I. DISCUSSION
 A. Ochoa's Disqualification
 
 19
 Appellant Ochoa claims that the Commission's findings of fact and conclusions of law are not supported by substantial evidence and are therefore arbitrary and capricious.[3] We disagree.
 
 
 20
 Appellant first argues that her inconsistent testimony can be explained as a misunderstanding, that the witnesses who contradicted her testimony were biased against her for various reasons, or that they misinterpreted her statements, which were calculated merely to downplay the possibility that she might leave her job at WMXC. Contrary to Ochoa's portrayal, her disqualification was not the result of a simple misunderstanding. Upon reviewing the transcript of testimony, we find that the Review Board's assessment of what happened at the evidentiary hearing is supported by substantial evidence. The Board concluded:
 
 
 21
 Ochoa is in error that she testified consistently throughout the hearing sessions. She explicitly declared at the initial hearing session that she had told her supervisors, Gurley and Thorne, and co-workers she would move to Lenoir if her application were granted and that Gurley was clearly aware of her plans. It was only after significant time, money, and efforts were expended by the opposing parties to refute this testimony that Ochoa disavowed it and conceded she had couched her statements to her supervisors and co-workers in the negative, and could understand how they misinterpreted her comments and arrived at a belief that she was not intending to move to Lenoir or to operate the station. In this regard, our affirmance of the ALJ's holding is not dependent on whether Ochoa was truthful or not to her co-workers about her future plans; rather, it is based solely on whether she testified candidly at hearing, and the testimony quoted above reveals that she did not.
 
 
 22
 7 F.C.C.Rcd. 6569, 6571 (Rev.Bd.1992). Indeed, Ochoa had numerous opportunities during the course of the proceedings to realize that the candor of her testimony was at issue and to clarify any misunderstandings about her claims. Instead, she continued, up until the ALJ confronted her late in the rebuttal session, to deny what she later agreed to be true: that she gave her co-workers at WMXC the impression that she would not move to Lenoir even if she were granted the license for the Lenoir radio station.[4]
 
 
 23
 In her exceptions, Ochoa argued that the ALJ erred in disqualifying her without first specifying a basic qualifying issue. It is true that the FCC may not disqualify an applicant for allegedly perjured testimony after the hearing record is closed where the applicant was never made aware that her testimony was being questioned. See, e.g., Pleasure Island Broadcasting, 6 F.C.C.Rcd 4163, 4164, p 10 (Rev.Bd.1991). However, as the Review Board in Ochoa's case pointed out, there are situations in which "an applicant may be disqualified in the absence of a basic qualifications issue for candorless testimony occurring directly before the agency...." Maria M. Ochoa, 7 F.C.C. Rcd 6569, 6571 (Rev.Bd.1992). See, e.g., William M. Rogers, 92 F.C.C.2d 187, 199-201 (1982) (stating that lack of candor need not be specially designated as a hearing issue because "truth and candor are always in issue" in FCC hearings); Swan Creek Communications, Inc. v. FCC, 39 F.3d 1217, 1222-23 (D.C.Cir.1994) ("[A]lthough the usual lack of candor finding is made after a hearing on the issue before the ALJ, where ... an irremediable conflict appears between records submitted to the Commission and testimony in the instant proceeding, the Board could properly make a lack of candor determination without an evidentiary hearing.") (citations omitted).
 
 
 24
 This court's decision in RKO General, Inc. v. FCC, 670 F.2d 215, 235 (D.C.Cir.1981), cert. denied, 456 U.S. 927 (1982), articulated three conditions which must be satisfied in order to disqualify an applicant without designating a character issue:
 
 
 25
 First, not only must the misconduct occur directly before the agency, but it should be of such a blatant and unacceptable dimension that its existence cannot be denied. The FCC has satisfied itself in this case with regard to RKO, whose lack of candor "is abundantly clear." Second, although formal notice may not always be necessary, it should be evident that the party has some form of actual notice of the conduct said to be at issue, and must not be prejudiced by surprise. Finally, the party must be given an "opportunity to speak in (its) own behalf in the nature of a right of allocution."
 
 
 26
 670 F.2d at 235 (citations omitted). All three of these requirements are satisfied in this case. First, substantial evidence supports the Board's finding that Ochoa engaged in misrepresentation during the hearings, and it is well-established "that false statements in the course of the hearing process are, in and of themselves, of substantial significance, ... and that such false testimony may lead to disqualification." Old Time Religion Hour, Inc., 95 F.C.C.2d 713, 719 (Rev.Bd.1983) (citations omitted).[5]
 
 
 27
 The second prong of the RKO General test was satisfied here because Ochoa was on actual notice that the veracity of her testimony was being challenged. ALJ Miller repeatedly expressed his concern about the sharp conflict in testimony between the appellant and the other witnesses on the issue of what she told co-workers about her intentions to relocate. Indeed, he called an extraordinary hearing just for the purpose of hearing rebuttal testimony and resolving the conflict between the two sides' assertions on this specific point. Tr. 240-43, 433-36, 582. At the hearings, four different witnesses took the stand at various points to testify that Ochoa had told them that she did not intend to leave WMXC-FM to move to Lenoir if her application were granted.[6] In light of the ALJ's actions and the testimony of the other witnesses, Ochoa should have been on notice that her candor was specifically at issue. See, e.g., William M. Rogers, 92 F.C.C.2d 187, 1982 WL 190904 (F.C.C.), at * 9 (finding, in a similar situation, that an applicant was not "deprived of his procedural rights because of a lack of notice that his candor was at issue"). Furthermore, in some cases the agency has held that no additional notice is required in situations in which applicants are aware that they are testifying under oath. For example, in Old Time Religion, the Commission explained that it was well-established that "specific notice to an applicant that he [or she] must testify truthfully is superfluous, and that such false testimony may lead to disqualification." 95 F.C.C.2d 713, 719 (Rev.Bd.1983) (citations omitted). Old Time Religion thus suggests that witnesses in FCC licensing proceedings are on notice that the candor of their testimony is at issue whenever they take an oath prior to testifying.
 
 
 28
 The third prong of the RKO General test is also met because Ochoa did have an opportunity to speak on her own behalf, both during the original evidentiary hearing and during the rebuttal session. Given the fact that she was on actual notice of the ALJ's concern with discrepancies in the witnesses' testimony, she had ample opportunity to clarify and elaborate upon her application for the license and her earlier testimony.
 
 
 29
 Finally, it is irrelevant that Ochoa's false statements related only to statements to her co-workers, rather than to her actual intention to move to Lenoir. The Supreme Court has held that it is not important that an applicant's false statements pertain to issues that are immaterial to the pending application. See FCC v. WOKO, Inc., 329 U.S. 223, 227 (1946) ("The willingness to deceive a regulatory body may be disclosed by immaterial and useless deceptions as well as by material and persuasive ones."); see also Richardson Broadcast Group, 7 F.C.C.Rcd 1583 (1992) ("It is well-established ... that the 'fact of concealment [during FCC hearings] may be more significant than the facts concealed' because it shows a willingness to deceive the Commission.") (quoting Character Qualifications, 102 F.C.C.2d 1179, 1210 n. 77 (1986)).[7]
 
 
 30
 In addition to her claim that the FCC should have designated a specific character issue before disqualifying her for lack of candor, Ochoa argues that her disqualification was invalid because the Commission applied disparate standards to her application and Foothills' application. Ochoa maintains that, if Foothills had been held to the same standard of candor in the licensing proceeding as she was, Foothills also would have been disqualified.[8] But appellant has failed to produce any significant evidence that the Review Board applied a more lenient standard to Foothills' application.[9] Thus, her argument must fail.
 
 
 31
 For the foregoing reasons, we affirm the disqualification of Maria M. Ochoa from the Lenoir license application competition. The conclusions of the ALJ and the Review Board were supported by substantial evidence and were not arbitrary and capricious.
 
 
 32
 II. OCHOA'S LACK OF STANDING TO CHALLENGE THE GRANT OF THE
 
 LICENSE TO FOOTHILLS BROADCASTING
 
 33
 An applicant disqualified from competing for a broadcast license usually lacks standing to appeal the subsequent disposition of that license since, in most cases, no cognizable injury can be demonstrated by such a disqualified applicant. See Garden State Broadcasting Ltd. Partnership v. FCC, 996 F.2d 386, 395 (D.C.Cir.1993). Appellant argues that her situation should fall under the exception to the Garden State rule articulated in Jacksonville Broadcasting Corp. v. FCC, 348 F.2d 75 (D.C.Cir.1965), in which a disqualified applicant was allowed to challenge the grant of a competing application because she had been the victim of a double standard which, if corrected, would have required the court to overturn both the plaintiff's disqualification and the other applicant's award of the license. In that case, there was a cognizable injury shown because the improperly disqualified applicant would have a new chance to attain the license once the improperly awarded license had been revoked.
 
 
 34
 Appellant's argument is unavailing. As appellee correctly argues, the Jacksonville exception is inapplicable here because, in Jacksonville, both applicants for the broadcasting license had engaged in the same misconduct (lobbying a Commissioner about a pending licensing proceeding), but only one of the applicants was held accountable. See Appellee's Brief, at 28 (citing Jacksonville, 348 F.2d at 77-80); accord Orange Park Florida TV, Inc. v. FCC, 811 F.2d 664, 672 (D.C.Cir.1987) (finding that a disqualified applicant could establish standing to challenge the FCC's award of a license in a case where, "[b]ut for that award [to the other applicant], it would still be open season for [the disqualified applicant] in an effort to secure rights to channel 25"). In this case, by contrast, the Commission did not apply disparate standards to the license applications of Ochoa and Foothills. Therefore, Ochoa lacks standing to challenge the FCC's decision to grant the license to Foothills.
 
 
 
 [1]
 See Policy Statement on Comparative Broadcast Hearings, 1 F.C.C.2d 393, 395 (1965) (explaining the pro-integration policy that was in effect at the time of Ochoa's application)
 
 
 [2]
 At the initial evidentiary hearing, Ochoa also denied telling Rita Thorne, general manager at WMXC, that she had no plans of moving to Lenoir to manage the new station. See Tr. 104. Yet Thorne later testified at the rebuttal hearing that Ochoa had made statements to her indicating that she did not plan to leave her job at WMXC in the event her application were granted. Tr. 359-60
 
 
 [3]
 The Communications Act of 1934 provides that "review by the court shall be limited to questions of law and that findings of fact by the Commission, if supported by substantial evidence, shall be conclusive unless it shall clearly appear that the findings of the Commission are arbitrary or capricious." 47 U.S.C. § 402(e); see also Federal Communications Comm'n v. WOKO, Inc., 329 U.S. 223, 228 (1946) (emphasizing that "the fact that [the Court] might not have made the same determination [about a licensee's eligibility] on the same facts does not warrant a substitution of judicial for administrative discretion since Congress has confided the problem to the latter")
 
 
 [4]
 The transcript from the rebuttal session includes this interchange between ALJ Miller and Ochoa:
 JUDGE MILLER: ... Did you tell [your co-workers], no, I am not going, I'll be here at WMXC, don't you worry about it, in order to protect your shoulder blades?
 THE WITNESS: I probably led them to believe that. By couching everything I everything that I ever said about it in the negative....
 * * *
 JUDGE MILLER: ... And to continue it, to continue the line of thinking, because you told or gave them the impression that you were not going to go to Lenoir, didn't mean that you had abandoned your original intention of going to Lenoir? But that was something that you knew?
 THE WITNESS: Right.
 JUDGE MILLER: And you didn't want them to know?
 THE WITNESS: Right. I mean I just--yeah.
 JUDGE MILLER: All right. Proceed, Mr. Yelverton.
 And you see, coming back to that first testimony, had you said to me, when I asked you those questions directly, had you said to me, Judge, I may have used words that conveyed the impression, your testimony today, conveyed the impression that I was going to stay with WMXC and he didn't need to worry, Jake was safe, he wouldn't be left high and dry without a sales manager, had that been your answer there, you see, I would--there might have never been a rebuttal session.
 THE WITNESS: (Laughter.) I wish I would have known.
 Tr. 1017-19.
 
 
 [5]
 Ensuring candor in the licensing application process is of obvious and paramount concern to the FCC. Due to the nature of many of the Commission's comparative criteria for granting licenses (i.e., the criteria are relatively easy to evade or falsify), it is imperative that prospective licensees testify with complete candor at these evidentiary hearings. See, e.g., Emission de Radio Balmeseda, Inc., 7 F.C.C.Rcd 3852, 3858 (Rev.Bd.1992) (explaining that the FCC's "demand for absolute candor [during the license application process] is itself all but absolute"). Accordingly, the Communications Act of 1934 requires that all license applications be under oath or affirmation. See 47 U.S.C. § 308(b). The Act also provides that any station license may be revoked for false statements in the application. See 47 U.S.C. § 312(a)
 
 
 [6]
 Ochoa cites various evidence (in the rebuttal testimony and in her briefs) indicating that some or all of the four witnesses who testified as to her statements while she was still working at WMXC may have been biased against her. The ALJ determined that none of these witnesses were distorting their testimony in an effort to "get back" at Ochoa. Aside from the deference owed to the ALJ's conclusions about witness credibility, it is clear from the record that Ochoa herself eventually admitted that she had made such statements to her co-workers. Thus, her final testimony about her own actions and the witnesses' testimony about her actions were not inconsistent. Thus, any animus the witnesses might have felt towards Ochoa was ultimately irrelevant to the lack of candor
 
 
 [7]
 For similar reasons, Ochoa's objection to ALJ Miller's refusal to subpoena Vanessa Keys to testify at the rebuttal sessions is unfounded. Not only was there a procedural flaw in her request, but she also failed to demonstrate that Keys would have introduced testimony that was different from that offered by the witnesses that were already testifying. See J.A. 320. Keys was to testify that Ochoa actually intended to move to Lenoir, whereas the discrepancy in testimony related not to Ochoa's actual intentions, but only to what she had told her other co-workers about her intentions
 
 
 [8]
 Foothills Broadcasting was disqualified for misrepresentation in the ALJ's initial decision. See 7 F.C.C.Rcd at 1863-64, pp 28-44, 1869, pp 11-19. However, the Review Board reversed this disqualification because it could find no deceptive intent or abusive conduct by Foothills. See 7 F.C.C.Rcd at 6575, pp 28-29
 
 
 [9]
 The Commission considered this claim of Ochoa's in reviewing one of her petitions for reconsideration. See Maria M. Ochoa, 9 F.C.C.Rcd 56 (1993). Substantial evidence supports the Commission in concluding that her assertions that Foothills had engaged in misrepresentation in its license application were unfounded. See id. at 56, pp 3-4 (finding no credible evidence that Foothills had been anything but candid in pledging its intentions of having integrated ownership and management at the Lenoir radio station)