920 F.2d 1039
 287 U.S.App.D.C. 245
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
CATOCTIN BROADCASTING CORP. OF NEW YORK
v.
FEDERAL COMMUNICATIONS COMMISSION.
 No. 89-1552.
 United States Court of Appeals, District of Columbia Circuit.
 Dec. 18, 1990.
 
 Before SILBERMAN, HENDERSON and RANDOLPH, Circuit Judges.
 JUDGMENT
 Per Curiam.
 
 
 1
 This case was heard on appeal from the Federal Communications Commission. The Court has determined that the issues presented occasion no need for a published opinion. See D.C.Cir. Rule 14(c). For the reasons set forth in the accompanying opinion, it is
 
 
 2
 ORDERED and ADJUDGED that the orders from which this appeal has been taken be affirmed.
 
 
 3
 It is FURTHER ORDERED that the Clerk withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir. Rule 15(b).
 
 MEMORANDUM
 
 4
 Appellant Catoctin Broadcasting Corp. of New York (Catoctin) appeals two orders of the Federal Communications Commission (Commission) denying renewal of Catoctin's radio broadcast license. On appeal Catoctin contends the Commission acted arbitrarily and capriciously in denying renewal rather than permitting divestiture. Finding the Commission's decision was within its discretionary enforcement authority, we affirm its denial of renewal.
 
 
 5
 Catoctin, a New York corporation solely owned by Henry Serafin, operates WBUZ, a 250-watt AM radio station in Fredonia, New York. Serafin, who was initially hired as a salesman in 1973 and was later promoted to general manager, acquired a 50% ownership interest in the station in 1975 and the remaining interest in 1978.
 
 
 6
 On May 2, 1985, the Commission designated Catoctin's 1981 and 1984 license renewal applications for hearing. An administrative law judge (ALJ) heard the matter on January 13-17, 1986,[1] and by order released August 22, 1986, concluded that Catoctin lacked the qualifications to continue as a licensee and that the renewal should therefore be denied. Specifically, the ALJ found Serafin guilty of (1) refusing to make the station's public files available for review by citizens, furnishing incomplete files to citizens, failing to maintain complete files and attempting to discourage, harass and intimidate individuals seeking to review the files, all in violation of 47 C.F.R. Sec. 73.3526; (2) making misrepresentations on Catoctin's 1981 renewal application regarding steps taken to ascertain and to meet community programing needs; (3) discriminatorily refusing to hire a black female job applicant; (4) failing to conduct Fall 1982 and February 1984 radio contests as announced and promoted, in violation of 47 C.F.R. Sec. 73.1216; and (5) continuing to make misrepresentations at the hearing.
 
 
 7
 By decision released April 2, 1987, a three-member review board "adopt[ed] the ALJ's clear, concise, and well-reasoned findings of fact and conclusions of law," with only slight modification, and ordered that Catoctin's renewal applications be denied.[2]
 
 
 8
 Catoctin applied to the Commission for review of the board's decision asking that, if the findings were upheld, the Commission sanction Catoctin with forced divestiture rather than outright denial of renewal. By order released March 24, 1989, the Commission affirmed the review board's findings regarding Serafin's racial discrimination, his failure to conduct the fall 1982 contest as advertised and his misrepresentations in Catoctin's 1981 renewal application.[3] Accordingly, the Commission concluded Catoctin was unqualified to remain a licensee and, "after considering Catoctin's alternative arguments and proposed remedies," denied the applications for renewal.
 
 
 9
 On April 21, 1989, Catoctin moved for reconsideration of the Commission's decision, asserting that nonrenewal of Catoctin's license was inconsistent with the Commission's intervening approval of a settlement agreement in RKO General, Inc., 3 FCC Rec. 5057 (1988), which permitted licensee RKO General, Inc. (RKO) to assign a Los Angeles television broadcast license for less than market value, despite an ALJ's finding of disqualifying misconduct. Catoctin contended this inconsistency reflected a double standard favoring large licensees over small ones.
 
 
 10
 By order released August 15, 1989, the Commission denied reconsideration, distinguishing the circumstances in RKO. The Commission observed that in RKO it had found divestiture to be in the public interest because it would (1) help the Commission to avoid years of costly and burdensome litigation in the administratively and legally complex proceeding which involved fourteen RKO licenses and seventy competing license applications and (2) free the public from years of continued broadcasting by a challenged licensee in danger of losing its license. By contrast, the Commission found Catoctin's renewal proceeding presented "no such extraordinary public interest considerations." The Commission further noted it had found the RKO settlement did not subvert deterrence because the assignment was to be for less than full market value and because RKO had already lost a valuable Boston television license on account of the same misconduct then under consideration.
 
 
 11
 On appeal Catoctin does not challenge the Commission's findings regarding Serafin's misconduct or its lack of qualification to continue as a licensee, but only the Commission's refusal to permit assignment of its license. In urging reversal of that decision, Catoctin, advancing substantially the same argument raised on the motion for reconsideration before the Commission, asserts that the Commission's denial of divestiture was arbitrary and capricious because it was "inconsistent on its face" with the Commission's "new policy," applied in RKO and other recent licensure proceedings, which permits unqualified licensees to assign their licenses. We find Catoctin's argument unpersuasive.
 
 
 12
 Selection of the appropriate sanction for licensee misconduct is a matter committed to the Commission's discretion. West Coast Media, Inc. v. FCC, 695 F.2d 617, 620 (D.C.Cir.1982), cert. denied, 464 U.S. 816 (1983). In each of the cases cited by Catoctin in which assignment of a license was permitted, the Commission exercised its discretion to permit divestiture, pursuant to a settlement agreement, after finding that under the particular circumstances such action would serve the public interest and would not undermine deterrence.[4] In this proceeding, the Commission reached a different conclusion and determined that outright denial of renewal, rather than divestiture, would best serve the public interest and its own legislative mission. In each instance the Commission was "called upon to exercise its specialized, experienced judgment" and its exclusive authority "to develop that enforcement policy best calculated to achieve the ends contemplated by Congress and to allocate its available funds and personnel in such a way as to execute its policy efficiently and economically." Moog Indus., Inc. v. FTC, 355 U.S. 411, 413, reh'g denied, 356 U.S. 905 (1958).[5] That the Commission's particular judgments produce different results in the individual proceedings does not of itself justify review by this court. See FCC v. WOKO, Inc., 329 U.S. 223, 228 (1946) (the Commission is not bound "to deal with all cases at all times as it has dealt with some that seem comparable"). We have approved the sanction of nonrenewal in other proceedings, see Stereo Broadcasters, Inc. v. FCC, 652 F.2d 1026 (D.C.Cir.1981); Jefferson Radio Co. v. FCC, 340 F.2d 781 (D.C.Cir.1964), and, given the uncontested findings of misconduct by Serafin, we cannot say the Commission abused its discretion in denying renewal to Catoctin. Accordingly, we defer to the Commission's expertise and judgment and direct that its orders be
 
 
 13
 Affirmed.
 
 
 
 [1]
 Between the designation and the hearing, the ALJ twice suspended procedural deadlines while Catoctin attempted, unsuccessfully, to arrange a distress sale of the station
 
 
 [2]
 One Review Board member, in a separate statement, suggested that the Commission might wish to order divestiture rather than outright denial as the appropriate sanction for licensee disqualification in all cases, including Catoctin's
 
 
 [3]
 Concluding that this misconduct by itself "compelled" denial of renewal, the Commission declined to address the findings of the ALJ and review board on Catoctin's public files and the February 1984 contest
 
 
 [4]
 See RKO General, Inc., 3 FCC Rec. 5057, 5059-60, 5062 (1988); Spanish Int'l Communications, 2 FCC Rec. 3336, 3339-40 (1987); A.S.D. Answer Serv., Inc., 1 FCC Rec. 753, 754 (1986); George E. Cameron Jr. Communications, 56 Radio Reg. (P & F) 825, 828 (1984)
 
 
 [5]
 In recognizing the Commission's authority to make such judgments, we express no opinion on the propriety of its determinations in the other cited proceedings which are not before us for review